UNITED STATES of America, Appellee,

v.

William J. BECKER, Appellant.

UNITED STATES of America, Appellee,

v.

Albert J. BRUNO, Appellant.

UNITED STATES of America, Appellee,

v.

James E. ELSKOE, Appellant.

Nos. 77–1653 to 77–1655.

United States Court of Appeals,
Fourth Circuit.

Argued July 18, 1978.

Decided Oct. 31, 1978.

Leslie L. Gladstone, Baltimore, Md., for appellant in 77–1653.

Andrew Jay Graham, Baltimore, Md., for appellant in 77–1655.

Michael E. Marr, Susan S. Myerberg, Baltimore, Md., on brief, for appellant in 77–1654.

Catherine Blake, Asst. U. S. Atty., Baltimore, Md. (Jervis S. Finney, U. S. Atty., and Thomas L. Crowe, Asst. U. S. Atty., Baltimore, Md., on brief), for appellee.

Before BOREMAN, Senior Circuit Judge, and WINTER and HALL, Circuit Judges.

BOREMAN, Senior Circuit Judge:

William Becker, Albert Bruno, and James Elskoe were indicted jointly on a charge of conspiring to effect Becker's escape from federal custody, 18 U.S.C. §§ 371, 751(a). The defendants were tried together and the jury failed to agree upon a verdict whereupon a mistrial was declared. Seventy-nine days later the case came on for trial before a second jury which returned a guilty verdict as to each defendant. Becker and one George Gutridge had been in federal custody in Florida and were transported together to Maryland by U. S. Marshals. Gutridge was being held on a federal probation violation warrant and Becker was brought to Maryland to face counterfeiting and stolen securities charges. At the time of his removal to Maryland Becker was serving a sentence in Florida for violations of the Dyer Act.

Gutridge testified at trial that he was confined with Becker in the Baltimore City Jail when Becker told him about his plans to escape. Briefly stated, the plans were that Elskoe, a Correctional Officer at the jail, was to be paid $10,000 to supply false and forged papers and to arrange for the services of two men to pose as United States Marshals to effectuate Becker's release from jail. Gutridge further testified that Becker told him that after his escape he, Becker, would go to Venezuela and negotiate with Venezuelan terrorists for the release of an American corporate official, William Neilhouse.

Subsequently, Becker introduced Gutridge to Elskoe and, in Gutridge's presence, Elskoe asked Becker for an advance of $1,000. Becker told Elskoe that Bruno, a close associate of Becker's, would furnish the $1,000.00. Gutridge was released on bail and met with Elskoe and Bruno while they plotted the escape. Bruno purchased a boat at Becker's request and rented an automobile similar to the type used by Marshals in transporting prisoners. Elskoe obtained an official U. S. Marshal's remand form which was used officially by Marshals in removing prisoners from jail; he obtained handcuffs, chains, and guns and hired two men, "Mike" and "Jose," to pose as U. S. Marshals.

Gutridge became concerned about his role in the escape conspiracy and contacted an agent of the FBI to warn him of the impending escape attempt. The two men who were to pose as Marshals drove the rented auto to the vicinity of the jail and Elskoe, driving in another automobile with Gutridge and a third man, stopped at the jail and entered the facility for the ostensible purpose of using the restroom. Upon leaving the jail, Elskoe appeared apprehensive because there were two men in the guard-tower and he abandoned the escape attempt. Upon concluding that there probably would be no further attempt to effectuate Becker's escape, the FBI agents arrested Elskoe and Bruno.

On appeal the major issue concerns the court's denial of defendants' various mo-

tions for severance. Becker and Elskoe contend that their trial should have been severed from Bruno's trial. In addition, Becker contends that his trial should have been severed from that of Elskoe.

On the second day of the second trial defense counsel, for the first time, stated that Bruno could give exculpatory testimony in regard to Becker and Elskoe. Bruno had allegedly told his attorney that he would testify if his trial were severed from the trial of his codefendants and his testimony would be that he and Elskoe never intended to help Becker escape, that their preparations were nothing more than an elaborate attempt to extort money from Becker under false pretenses.

The judge attempted to determine if Bruno would indeed testify at a separate trial. Bruno's counsel stated that his client would testify in favor of Elskoe and Becker "[i]f he were tried first. . . . " (Tr. 597) The judge indicated that if the cases were severed, he would proceed with the trial of *Becker and Elskoe first.* As a condition precedent to severance, the judge required that Bruno state under oath, out of the presence of the jury, the substance of his testimony. Bruno refused to testify under oath to the matters proffered before the court and the judge thereafter denied the motion for severance.

Appellants argue that the trial court erred in (1) declaring that if the cases were severed, Becker and Elskoe would be tried first and (2) requiring that Bruno proffer his testimony under oath prior to severance. They contend that the court's actions confronted Bruno with a substantial "Fifth Amendment problem" and, in effect, kept him from testifying in favor of his codefendants through fear of self-incrimination.

▪ The grant or denial of a motion for severance lies within the sound discretion of the trial court and its action on such motion will be overturned only when there has been a clear abuse of such discretion. *United States v. Jamar,* 561 F.2d 1103, 1106 (4 Cir. 1977); *United States v. Truslow,* 530 F.2d 257, 261 (4 Cir. 1975). The trial court must weigh the inconvenience and expense to the government and witnesses of separate trials against the prejudice to the defendants inherent in a joint trial, and its determination will not be disturbed unless the denial of a severance deprives the defendants of a fair trial and results in a miscarriage of justice. *United States v. Walsh,* 544 F.2d 156, 160 (4 Cir. 1976), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1105, 51 L.Ed.2d 539 (1977); *United States v. Shuford,* 454 F.2d 772, 775–76 (4 Cir. 1971).

▪ There is no abuse of judicial discretion in denying a codefendant's motion for severance when based upon a codefendant's *conditional offer* to exculpate his fellow codefendants if he is tried first. *United States v. Gay,* 567 F.2d 916 (9 Cir. 1978); *United States v. Frazier,* 394 F.2d 258 (4 Cir.), *cert. denied,* 393 U.S. 984, 89 S.Ct. 457, 21 L.Ed.2d 445 (1968). To rule otherwise would allow codefendants to employ a motion for severance to obtain benefits that they would not have but for their joint indictment. *Gay, supra* at 920. In *Frazier,* this court rejected an argument similar to the one presented in the instant case regarding a codefendant witness' demand that he be tried first as a condition precedent to his testimony. We recognized that to accede to the codefendant's demand would create a situation where, following his own trial, the witness would be more inclined to "throw a bone" to his codefendants by testifying favorably to them because his own case had been disposed of and he had little to lose by testifying. *Frazier, supra* at 261. Thus, in light of Bruno's conditional offer to testify, there was nothing improper in the court's determination that, if the cases were severed, Becker and Elskoe would be tried first.

▪ Ordinarily a codefendant need not proffer his testimony under oath to establish a basis for granting a motion for severance. *United States v. Morrow,* 537 F.2d 120, 135 n. 9 (5 Cir. 1976); *United States v. Martinez,* 486 F.2d 15, 22 (5 Cir. 1973); *Byrd v. Wainwright,* 428 F.2d 1017 (5 Cir. 1970). Nevertheless, the judge's requirement that Bruno proffer his testimony un-

der oath prior to severance was entirely justified under the circumstances of the instant case. A trial judge must determine that there is a "reasonable probability" that exculpatory testimony will be forthcoming and that the codefendant will waive his Fifth Amendment right at a separate trial before a severance is granted. *United States v. Shuford, supra* at 778. *See United States v. Finkelstein*, 526 F.2d 517, 523–24 (2 Cir. 1975). Because the trial judge here indicated that Becker and Elskoe would be tried first he was justified in determining whether Bruno would adhere to his conditional offer to testify or whether he would invoke his Fifth Amendment privilege against self-incrimination. It is apparent that if Bruno refused to testify outside the presence of the jury to establish a basis for granting the motion for severance, he would probably refuse to waive his Fifth Amendment right and testify before the jury at Becker and Elskoe's trial if they were tried first. Because Bruno refused to waive his Fifth Amendment right, the judge did not abuse his discretion in denying the motion to sever.

Becker also contends that the judge should have severed his trial from the trial of Elskoe. The basis for this contention is the allegation that Becker and Elskoe's defenses were antagonistic and incompatible. Elskoe called no witnesses in his behalf and offered no evidence in his defense. In Elskoe's closing argument to the jury he discounted Gutridge's credibility and argued that there was a complete absence of evidence against him, that the escape plot was implausible and that, at best, the government's case against him showed nothing more than an elaborate attempt to extort money from Becker under false pretenses. Becker, in contrast, based his defense on his denial of any knowledge of the escape plot and relied upon evidence of the scheme's implausibility. Appellants contend that there is a conflict between the codefendants' defenses because Becker argued that he did not know of any plot and Elskoe argued that he was "stringing Becker along" in an attempt to take money from him—thus implying that Becker knew of the plot.

■ Antagonistic defenses do not *per se* require severance, even if the defendants are hostile or attempt to cast the blame on each other. *United States v. Barber*, 442 F.2d 517, 530 (3 Cir.), *cert. denied*, 404 U.S. 958, 92 S.Ct. 327, 30 L.Ed.2d 275 (1971). To obtain a severance on the ground of conflicting defenses it must be demonstrated that the conflict is so prejudicial that the differences are irreconcilable, "and that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty." *United States v. Ehrlichman*, 178 U.S.App.D.C. 144, 163, 546 F.2d 910, 929 (1976), *cert. denied*, 429 U.S. 1120, 97 S.Ct. 1155, 51 L.Ed.2d 570 (1977), *quoting United States v. Robinson*, 139 U.S.App.D.C. 286, 289, 432 F.2d 1348, 1351 (1970). Becker must show affirmatively an abuse of discretion on the part of the trial court in denying severance. We do not think he has met that burden.

■ Because Elskoe did not testify, call any witnesses in his own behalf or present any evidence, any prejudice to Becker that might have arisen from Elskoe's defense is purely speculative. Speculative allegations as to possible prejudice do not meet the burden of showing an abuse of discretion in denying a motion for severance. *United States v. Martinez*, 466 F.2d 679, 687 (5 Cir. 1972). As we recognized in *United States v. Frazier, supra* at 261:

> it [was] not so much that the defenses were antagonistic to each other as it is that the evidence was antagonistic to those defenses—and indeed it was, but not thereby illegal or inadmissible and certainly not error as the basis for overruling a motion for severance.

Becker contends that he was denied the right to a speedy retrial and, therefore, the charges against him should have been dismissed. His second trial began 79 days after the court declared the initial mistrial. The Speedy Trial Act provides in pertinent part:

> If the defendant is to be tried again following a declaration by the trial judge of a mistrial or following an order of such judge for a new trial, the trial shall com-

mence within sixty days from the date the action occasioning the retrial becomes final. 18 U.S.C. § 3161(e).

The Speedy Trial Act, however, does not provide any sanction for the violation of § 3161(e). *See United States v. Amendola*, 558 F.2d 1043 (2 Cir. 1977). Becker seeks relief under the Sixth Amendment's guarantee of a speedy trial and Rule 48(b) of the Federal Rules of Criminal Procedure for unnecessary delay.

The government alleges that the judge was prepared to honor Becker's request for a retrial within 60 days but had to schedule the trial at a later date due to codefendants' protests to moving the trial date forward on the court's calendar to fall within the statute's 60-day rule. Becker argues that he made a timely request for a speedy retrial and the court could have complied with the provisions of the Speedy Trial Act by severing his case from that of his codefendants for the purpose of trying him alone within the 60-day period following the mistrial.

Four criteria are relevant in weighing a defendant's constitutional right to a speedy trial and in consideration of a Rule 48(b); Fed.R.Crim.Pro., motion to dismiss. These criteria are: (1) the length of the delay; (2) the reason for the delay; (3) defendant's assertion of his right to a speedy trial; and (4) the prejudice, if any, the defendant suffered by the delay. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). As to the first two criteria; the length of the delay was only 19 days and was attributable to codefendants' protests against moving the trial date forward and not to any dilatory action on the part of the government. *United States v. Amendola, supra* at 1045. As to the last two criteria, although Becker conscientiously asserted his right to a speedy retrial, the only prejudice he alleges from the delay is the disappearance of a *government* witness. The witness, Joseph Lance, testified at the first trial, under a grant of immunity, that he returned the rented automobile to the rental agency for Bruno. Lance left the country for Jamaica prior to the second trial and, after the government showed that it had made reasonable, but unsuccessful, efforts to find Lance and have him available as a witness at the retrial, the court allowed his transcribed testimony from the first trial to be read to the jury. *United States v. Mathis*, 550 F.2d 180 (4 Cir. 1976). It is apparent from the record that Lance's testimony was not a pivotal issue in the government's case against Becker and there is no allegation that the disappearance of the witness was, in any way, attributable to the 19-day delay.

Finally, Becker was not in custody solely for the purpose of awaiting trial but was serving a federal sentence imposed by another court and was within the trial court's jurisdiction on a Writ of Habeas Corpus Ad Prosequendum. It is clear that Becker was not prejudiced by the additional 19-day delay to the extent necessary to state a valid constitutional claim and the court did not abuse its discretion in denying Becker's motion to dismiss under Rule 48(b), Fed.R. Crim.Pro.

We have thoroughly reviewed other errors asserted by appellants and find none that merits discussion. Accordingly, the judgments of the district court are affirmed.

*Affirmed.*