UNITED STATES of America, Appellee,

v.

Francis P. DAVIS, Defendant, Appellant.

No. 79–1566.

United States Court of Appeals,
First Circuit.

Argued April 9, 1980.

Decided June 12, 1980.

John F. Cicilline, Providence, R. I., for defendant, appellant.

Stephen G. Milliken, Atty., U. S. Dept. of Justice, with whom Paul E. Murray, U. S. Atty., and Edwin J. Gale, Spec. Atty., U. S. Dept. of Justice, Providence, R. I., were on brief, for appellee.

Before, CAMPBELL and BOWNES, Circuit Judges, LOUGHLIN,* District Judge.

LOUGHLIN, District Judge.

In the present action, the defendant-appellant, Frank Davis, following a jury trial, was convicted of the crimes of conspiring to transfer and conceal property of a corporation in contemplation of the corporation's bankruptcy and to conceal corporate property from the corporation's receiver, trustee and creditors, in violation of 18 U.S.C. §§ 371 and 152. Appellant was also convicted of aiding and abetting the bankruptcy fraud, in violation of 18 U.S.C. §§ 152 and 2.

The evidence introduced at trial established that Eugene S. Roberts in concert with the appellant and several others engaged in a scheme to defeat the federal bankruptcy laws. The conspiracy, which existed from approximately February 15, 1977 until the return of the indictment on October 19, 1978, consisted of: 1. the purchase by Roberts, Inc. of substantial inventory on credit without intention of repayment; 2. its storage in the Depot Warehouse; 3. the clandestine removal and unreported sale of said inventory; 4. concealment of the alleged loss of the inventory by burning the Depot Warehouse and creating the appearance that its contents had been stolen and 5. the filing of a petition for bankruptcy and continuing efforts to defraud the creditors of the corporation.

*Of the District of New Hampshire, sitting by designation.

Four issues are presented to this court on appeal: 1. whether evidence of the sworn testimony given by Roberts before the State Fire Marshal in February of 1978 about the Depot fire and the conversations between Roberts and Van Beaver and Roberts and John Adams during the first three months of 1978 was properly admitted into evidence; 2. whether the district court erred in refusing to order the Government to immunize the witness Parente; 3. whether testimony elicited from the witness Gallucci by counsel for co-defendant Van Beaver denied appellant a fair trial; and 4. whether the district court correctly denied appellant's motions for judgment of acquittal and for a new trial.

Turning to the first issue, the appellant contends that the evidence showed only efforts to conceal the conspiracy and not acts in furtherance of the main criminal objective of the conspiracy and as such was not admissible. The Government contends that the evidence · proved the transfer and concealment of property of Roberts, Inc. and was properly admitted. The Government contends that a bankruptcy fraud conspiracy is an agreement to conceal property in contemplation of bankruptcy, and that acts and declarations of the co-conspirators during the pendency of the bankruptcy proceedings were admissible evidence of continuing conspiratorial efforts to conceal the assets of Roberts, Inc. in contemplation of bankruptcy.

A brief chronology of the scheme shows that Roberts testified that he planned the scheme with co-defendant, Van Beaver, at a meeting held early in the summer of 1977. In August of 1977, Roberts met with appellant and asked appellant to look for a remote warehouse to "be taken with the possibility of a fire in mind" in connection with "certain business plans". Subsequently, Roberts leased the Depot Warehouse and began to store the large inventory. Two weeks after the first meeting, appellant met with Roberts again. At that time Roberts told appellant "I'm going to take a dive and I've got to cover up my inventory loss-

es." Appellant informed Roberts that he would charge $5,000.00 for burning the Depot Warehouse. Merchandise was stored at the Warehouse and secretly moved and sold from September through November of 1977. The Depot Warehouse was set on fire on November 29, 1977. On December 23, 1977 Roberts filed a petition for bankruptcy in United States District Court. In February of 1978, Roberts was called to the State Fire Marshal's Office to give sworn testimony about the Depot fire. During the first three months of 1978, Roberts had the conversations with John Adams about appellant. In February of 1978, Roberts met with a co-defendant, Van Beaver. The indictment was filed on October 9, 1978.

In oral argument counsel for the appellant argued the appellant was not aware of the details of the plan, did not agree to further the bankruptcy scheme, and at no time had the specific intent to violate the bankruptcy law. Appellant argues that he was not a participant in the conspiracy, rather that his agreement was to set the fire and had nothing to do with the bankruptcy. As the trial record indicates, the testimony of Roberts shows that the appellant had knowledge of the bankruptcy scheme. Indeed, appellant's counsel conceded at trial that Robert's testimony established that "at some point he said to Davis 'you know I'm going to go into a bankruptcy, I'm going to defraud some people' ". The appellant Davis was co-conspirator in the conspiracy to defeat the federal bankruptcy laws. As the Eighth Circuit previously stated:

> Once there is satisfactory proof that a conspiracy has been formed, the question of a particular defendant's connection with it may be merely a matter of whether the stick fits so naturally into position in the fagot as to convince that it is part of it. It is therefore possible for the circumstances on an individual defendant's participation in an established conspiracy to become substantial from their weight in position and context, though in abstraction they may seem only slight. *Cf. Galatas v. United States*, 8 Cir., 80 F.2d 15, 24; *Marx v. United States*, 8

Cir., 86 F.2d 245, 250. And, of course, a defendant can join a conspiracy at any time and may be found to have done so when, with knowledge of its existence, he has undertaken to further its design. *Thomas v. United States*, 8 Cir., 156 F. 897, 912, 84 C.C.A. 477, 17 L.R.A.,N.S. 720; *Allen v. United States*, 7 Cir., 4 F.2d 688, 691; *Parnell v. United States*, 10 Cir., 64 F.2d 324, 327.

*Phelps v. United States*, 160 F.2d 858, 867–868 (8th Cir. 1947).

■ As a co-conspirator, the declarations and acts of the various members of the conspiracy made during the conspiracy in furtherance of the conspiracy become admissible against Davis. *Pinkerton v. United States*, 328 U.S. 640, 646–647, 66 S.Ct. 1180, 1183–84, 90 L.Ed. 1489 (1946); *United States v. U. S. Gypsum Co.*, 333 U.S. 364, 393, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948). Conversely, acts and declarations by a co-conspirator not made in furtherance of the conspiracy during the conspiracy are not admissible against each co-conspirator. The question we are presented with in this case, then is whether the evidence was of acts and declarations made during and in furtherance of the conspiracy or was of acts and declarations made to conceal the conspiracy. The United States Supreme Court has clearly stated that:

> This prerequisite to admissibility, that hearsay statements by some conspirators to be admissible against others must be made in furtherance of the conspiracy charged, has been scrupulously observed by federal courts. The Government now asks us to expand this narrow exception to the hearsay rule and hold admissible a declaration, not made in furtherance of the alleged criminal transportation conspiracy charged, but made in furtherance of an alleged implied but uncharged conspiracy aimed at preventing detection and punishment. . . . We are not persuaded to adopt the Government's implicit conspiracy theory which in all criminal conspiracy cases would create automatically a further breach of the general rule against the admission of hearsay evidence.

*Krulewitch v. United States*, 336 U.S. 440, 443–444, 69 S.Ct. 716, 718, 93 L.Ed. 790 (1949). *See also Lutwak v. United States*, 344 U.S. 604, 616, 73 S.Ct. 481, 488, 97 L.Ed. 593 (1953).

■ While *Krulewitch* and *Lutwak* clearly state that after the central criminal purposes of a conspiracy have been attained, a subsidiary conspiracy to conceal may not be implied from circumstantial evidence showing merely that the conspiracy was kept a secret and that the conspirators took care to cover up their crime in order to escape detection and punishment, the Court in *Grunewald v. United States*, 353 U.S. 391, 402, 77 S.Ct. 963, 972, 1 L.Ed.2d 931 (1957), makes a crucial distinction:

> By no means does this mean that acts of concealment can never have significance in furthering a criminal conspiracy. But a vital distinction must be made between acts of concealment done in furtherance of the main criminal objectives of the conspiracy, and acts of concealment done after the central objectives have been attained, for the purpose only of covering up after the crime. *Supra*, 405, 77 S.Ct. 974.

■ The court finds that the acts and declarations of Roberts introduced by the evidence in question were done in furtherance of the main criminal objectives of the conspiracy and as such were admissible against the appellant, Davis. *Forman v. U. S.*, 361 U.S. 416, 80 S.Ct. 481, 4 L.Ed.2d 412 (1960); *U. S. v. Del Vallee*, 587 F.2d 699, 704 (5th Cir. 1979); *U. S. v. Portner*, 462 F.2d 678 (2nd Cir. 1972), *cert. denied*, 409 U.S. 983, 93 S.Ct. 319, 34 L.Ed.2d 246 (1972). The court is in agreement with the district court judge that: "the conspiracy doesn't go out when the fire went out. It continues."

■ The second issue before the court on appeal is whether the district court erred in refusing to order the Government to immunize the witness, Parente. Anthony Parente was subpoenaed by the Government as a witness. He subsequently refused to answer all material questions on the grounds of self-incrimination. Parente was the Bat-talion Fire Chief with whom Eugene Roberts testified he entered into an agreement, whereby Parente was to delay the Fire Department's response to the fire for thirty-five hundred ($3,500.00) dollars. The appellant argues that by refusing to order the Government to immunize the witness, Parente, the appellant was denied his due process rights as guaranteed by the fifth amendment and his right to "compulsory process for obtaining witnesses in his favor" granted by the sixth amendment. It is the contention of the appellee that the court did not err in refusing to order the Government to immunize the witness and that appellant was not denied a fair trial by reason of the refusal. Under the theory of immunity statutes, a witness in return for the surrender of his fifth amendment right to remain silent on the grounds that he might incriminate himself, is promised that he will not be prosecuted based on the inculpatory evidence he gives in exchange. *U. S. v. Tramunti*, 500 F.2d 1334, 1342 (2nd Cir. 1974).

■ Courts have clearly stated that the power to apply for immunity pursuant to 18 U.S.C. §§ 6002–03 (1970), rests solely with the Government, being confined to the United States Attorney and his superior officers. *United States v. Graham*, 548 F.2d 1302, 1315 (8th Cir. 1977); *United States v. Allstate Mortgage Corp.*, 507 F.2d 492, 495 (7th Cir. 1974); *In re Kilgo*, 484 F.2d 1215, 1222 (4th Cir. 1973). The trial court has no power to grant immunity to a witness whose testimony the defendant may wish to offer and the Government cannot be forced to grant such immunity. *United States v. Benveniste*, 564 F.2d 335, 339 fn. 4 (9th Cir. 1977); *United States v. Jenkins*, 470 F.2d 1061, 1063 (9th Cir. 1972), *cert. denied*, 411 U.S. 920, 93 S.Ct. 1544, 36 L.Ed.2d 313 (1973); *Earl v. United States*, 361 F.2d 531, 534 (D.C.Cir. 1966), *cert. denied*, 388 U.S. 921, 87 S.Ct. 2121, 18 L.Ed.2d 1370 (1967). The role which the court is to play in the granting of immunity has been clearly defined for it:

> The court may scrutinize the record to ascertain that a request for immunity is, under the statute, jurisdictionally and

procedurally well-founded and accompanied by the approval of the Attorney General. See *Ullmann v. U. S.,* 350 U.S. 422 at 432–34, 76 S.Ct. 497 [at 503–04, 100 L.Ed. 511]. Under no circumstances, however, may a federal court prescribe immunity on its own initiative, or determine whether application for an immunity order which is both jurisdictionally and procedurally well-founded is necessary, advisable or reflective of the public interest, for the federal judiciary may not arrogate a prerogative specifically withheld by Congress. *Earl v. United States,* 124 U.S.App.D.C. 77, 361 F.2d 531 (1966); *Ellis v. United States,* 135 U.S.App.D.C. 35, 416 F.2d 791 (1969); *In re Kilgo,* 484 F.2d 1215 (4th Cir. 1973).

*In re Daley,* 549 F.2d 469, 479 (7th Cir. 1977), *cert. denied,* 434 U.S. 829, 98 S.Ct. 110, 54 L.Ed.2d 89 (1977).

Here the appellant argues that his fifth and sixth amendment rights have been violated by the district court's refusal to order the Government to immunize the witness. Some circuits have held that there are circumstances under which it appears that due process may demand that the Government request use immunity for a defendant's witness. *United States v. Morrison,* 535 F.2d 223, 229 (3rd Cir. 1976). *See dicta in United States v. Leonard,* 494 F.2d 955, 985 n. 79 (D.C.Cir. 1974) (concurring and dissenting opinion of Bazelon, C. J.); and *Cf. Earl v. United States,* 361 F.2d 531, 534 n. 1 (D.C. Cir. 1966). *See also Virgin Islands v. Smith,* 615 F.2d 964 (3rd Cir. 1980) (discussing circumstances under which a court's ordering of immunity might be proper).

▪ We need not decide to what extent we agree with these decisions since no such circumstances exist in the instant case. In *Morrison,* the circumstances were created when prosecutorial misconduct caused the defendant's principal witness to withhold out of fear of self-incrimination testimony which would otherwise allegedly have been available. There has been absolutely no allegation of any type of prosecutorial misconduct in the present situation. Nor is it a situation like that presented hypothetically in *Earl v. United States,* 361 F.2d 531, 534 n. 1 (D.C.Cir. 1966) where the Government secured testimony from one eyewitness by granting him immunity while declining to seek an immunity grant for defendant's witness to free him from possible incrimination to testify for the defendant. In *United States v. Alessio,* 528 F.2d 1079 (9th Cir. 1976), *cert. denied,* 426 U.S. 948, 96 S.Ct. 3167, 49 L.Ed.2d 1184 (1976), *rehearing denied,* 429 U.S. 873, 97 S.Ct. 193, 50 L.Ed.2d 156 (1976). Where the Government had sought and obtained immunity for one prosecution witness while refusing to exercise its authority to seek immunity for witnesses on behalf of the defense the Court stated:

> To interpret the Fifth and Sixth Amendments as conferring on the defendant the power to demand immunity for co-defendants, potential co-defendants, or others whom the Government might in its discretion wish to prosecute would unacceptably alter the historic role of the Executive Branch in criminal prosecutions. Of course, whatever power the government possesses may not be exercised in a manner which denies the defendant the due process guaranteed by the Fifth Amendment. . . . The key questions, then, is whether appellant was denied a fair trial because of the Government's refusal to seek immunity for defense witnesses.

*Alessio, supra,* 1082.

The court finds in the instant case that the appellant was not denied a fair trial because of the Government's refusal to seek immunity for the defense witnesses. The testimony sought by appellant went merely to the credibility of Eugene Roberts' testimony. Moreover, other means existed by which the defense could have challenged Roberts' testimony.

The trial was not rendered unfair because of the absence of the witness Parente's testimony. Appellant was not, therefore, denied due process. The trial court did not err in refusing to order the Government to immunize the witness.

The third issue before the court is whether the testimony elicited from the witness

Gallucci by counsel for co-defendant Van Beaver denied appellant a fair trial. William Gallucci was the Police Chief of West Warwick, Rhode Island. Witness Roberts testified that he was friendly with Gallucci and that while the fire investigation was going on he'd spoken to him. The appellant contends that the net result of the examination of Chief Gallucci by co-defendant's counsel was to give the jury a poor impression of the Chief, thereby giving the Government's principal witness Eugene Roberts greater credibility. The appellee contends that appellant's claim of denial of a fair trial· by the ineffective assistance rendered by co-defendant's counsel is in effect a contention that he was prejudiced by joinder of the trials where conflicting defense strategies were asserted.

In the instant action, the appellant was tried jointly with co-conspirator, Frank Van Beaver. Joinder of defendants is allowed under Rule 8(b) of the Federal Rules of Criminal Procedure which states that: "Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." If, however, the defendant will be prejudiced by joinder, he may move for severance under Rule 14 of the Federal Rules of Criminal Procedure which states that: "If it appears that a defendant or the Government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires."

■ Rule 14 permits a severance despite the propriety of the original joinder, if it is needed to avoid prejudice. 1 *Wright and Miller* § 221, p. 432. The appellant filed a motion to sever on November 24, 1978 which was subsequently denied. (This motion was not based on the examination of Gallucci.) The grant or denial of severance is clearly within the sound discretion of the trial court and its action on such a motion will be overturned only when there has been a clear abuse of such discretion. *United States v. Becker*, 585 F.2d 703 (4th Cir. 1978), *cert. denied*, 439 U.S. 1080, 99 S.Ct. 862, 59 L.Ed.2d 50 (1979); *United States v. Jamar*, 561 F.2d 1103, 1106 (4th Cir. 1977); *United States v. Truslow*, 530 F.2d 257, 261 (4th Cir. 1975); *United States v. Gambrill*, 449 F.2d 1148, 1159 (D.C.Cir. 1971).

■ The inconvenience and expense to the Government and witnesses of separate trials must be weighed by the trial court against the prejudice to the defendants inherent in a joint trial. The trial court's determination will not be disturbed unless the denial of a severance deprives the defendants of a fair trial and results in a miscarriage of justice. *United States v. Becker*, 585 F.2d 703, 706 (4th Cir. 1978), *cert. denied*, 439 U.S. 1080, 99 S.Ct. 862, 59 L.Ed.2d 50 (1979); *United States v. Walsh*, 544 F.2d 156, 160 (4th Cir. 1976), *cert. denied*, 429 U.S. 1093, 97 S.Ct. 1105, 51 L.Ed.2d 539 (1977); *United States v. Shuford*, 454 F.2d 772, 775–76 (4th Cir. 1971).

■ The burden is upon the appellant to show affirmatively an abuse of discretion on the part of the trial court in denying severance. *Becker, supra,* 707; *United States v. Crisona*, 271 F.Supp. 150 (D.C.N.Y.1967). The appellant has not met that burden in the instant action. The appellant was ably represented by counsel. Appellant does not allege that his attorney did not provide competent counsel, rather he questions the trial tactics of co-defendant's counsel.

"Antagonistic defenses do not per se require severance, even if the defendants are hostile or attempt to cast the blame on each other." *Becker, supra,* 707; *United States v. Barber*, 442 F.2d 517, 530 (3rd Cir. 1971), *cert. denied*, 404 U.S. 958, 92 S.Ct. 327, 30 L.Ed.2d 275 (1971). Rather, to obtain severance on the ground of conflicting defenses, it must be demonstrated that the conflict is so prejudicial that defenses are irreconcilable, and the jury will unjustifiably

infer that this conflict alone demonstrates that both are guilty. *Becker, supra,* 707; *United States v. Robinson,* 432 F.2d 1348, 1351 (D.C.Cir. 1970); *United States v. Ehrlichman,* 546 F.2d 910 (D.C.Cir. 1976), *cert. denied,* 429 U.S. 1120, 97 S.Ct. 1155, 51 L.Ed.2d 570 (1977). The court finds that the conflict present here is not so prejudicial, and that the trial court did not abuse its discretion in failing to grant a severance. The testimony elicited from the witness Gallucci by counsel for co-defendant Van Beaver did not deny appellant a fair trial.

The fourth and final issue presented to this court is whether the district court correctly denied the appellant's motions for judgment of acquittal and for a new trial. The appellant moved at the close of the Government's case pursuant to Rule 29 of the Rules of Criminal Procedure for a judgment of acquittal. After the verdict, appellant moved for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. Appellant contends that the evidence was insufficient to sustain his convictions for the conspiracy and the underlying bankruptcy fraud. Appellant argues that, if he did anything, he burned some debris and charred a building for money. Appellee contends that appellant was an integral part of the conspiracy and specifically intended to further the bankruptcy fraud when he agreed to burn, and then did burn the Depot Warehouse.

In reviewing the evidence, it must be taken in the light most favorable to the Government. *United States v. Doran,* 483 F.2d 369, 372 (1st Cir. 1973), *cert. denied,* 416 U.S. 906, 94 S.Ct. 1612, 40 L.Ed.2d 111 (1974); *United States v. Brown,* 495 F.2d 593 (1st Cir. 1974), *cert. denied,* 419 U.S. 965, 95 S.Ct. 226, 42 L.Ed.2d 179 (1974). A verdict must be sustained if there is substantial evidence, viewed in the light most favorable to the Government to uphold the jury's decision. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *Burks v. United States,* 437 U.S. 1, 17–18, 98 S.Ct. 2141, 2150–51, 57 L.Ed.2d 1 (1978). And it is clear that "a conviction can rest on the uncorroborated testimony of a co-defendant or accomplice". *United States v. Micciche,* 525 F.2d 544, 546 (8th Cir. 1975), *cert. denied,* 424 U.S. 966, 96 S.Ct. 1460, 47 L.Ed.2d 732 (1976), *rehearing denied,* 425 U.S. 985, 96 S.Ct. 2193, 48 L.Ed.2d 810 (1976), *quoting United States v. Guy,* 456 F.2d 1157, 1161 (8th Cir. 1972), *cert. denied,* 409 U.S. 896, 93 S.Ct. 136, 34 L.Ed.2d 153 (1972), *rehearing denied,* 409 U.S. 1002, 93 S.Ct. 327, 34 L.Ed.2d 263 (1972); *Wood v. United States,* 361 F.2d 802 (8th Cir. 1966), *cert. denied,* 385 U.S. 978, 87 S.Ct. 520, 17 L.Ed.2d 439 (1966).

The court finds that there is substantial evidence viewed in the light most favorable to the Government to uphold the jury's decision. Direct evidence was introduced through the testimony of co-conspirator, Eugene S. Roberts, that he had told the appellant about the bankruptcy fraud scheme stating "I'm going to take a dive and I've got to cover up my inventory losses."

Substantial circumstantial evidence was also introduced showing that the arson was knowingly committed in furtherance of the bankruptcy fraud conspiracy. The trial court thus did not err in denying appellant's motion for a judgment of acquittal and for a new trial.

The court affirms the trial court on the four issues presented to it today.

*Judgment affirmed.*