**UNITED STATES of America, Appellee,**

v.

**William CROOKS a/k/a "Billy,"
Defendant, Appellant.**

**No. 84–1510.**

United States Court of Appeals,
First Circuit.

Argued May 7, 1985.

Decided June 26, 1985.

Rehearing and Rehearing En Banc
Denied July 19, 1985.

Kenneth J. Fishman, Boston, Mass., by appointment of the Court, with whom Law Offices of Bailey & Fishman, Boston, Mass., was on brief, for defendant, appellant.

Richard F. Johnston, Concord, N.H., with whom Bruce E. Kenna, U.S. Atty., and Douglas J. Miller, Asst. U.S. Atty., Concord, N.H., were on brief, for appellee.

Before CAMPBELL, Chief Judge, BREYER, Circuit Judge, and WYZANSKI,* Senior District Judge.

BREYER, Circuit Judge.

William Crooks appeals from his conviction for conspiring to commit extortion. 18 U.S.C. § 1951. The evidence introduced at trial, viewed in a light favorable to the government, *United States v. Patterson*, 644 F.2d 890, 893 (1st Cir.1981), was sufficient for the jury to find the following:

John Viscardi owns the Cafe Mews, a restaurant and lounge in North Conway, New Hampshire. In February 1980 Viscardi hired Albert Ferguson, a disc jockey, to play recorded music for dancing in one part of the Cafe. Ferguson, with the help of his wife Kristin and various assistants, was a

---

* Of the District of Massachusetts, sitting by designation.

hit at the Cafe Mews; and he began to offer additional and similar entertainment at a new club called Daisey's. One Peter Sgro approached Ferguson, threatened to hurt him, and told him not to work at a club that competed with Viscardi's. Late on the night of August 14, 1980, Peter Sgro, the appellant Crooks, and one or two other men went to Daisey's and threatened to harm the Fergusons. Later that night they, and the Fergusons, all went to the Cafe Mews, where Crooks and others again threatened the Fergusons with physical harm. Crooks threw a glass at Kristin, hurting her badly enough to require a trip to the hospital.

A grand jury indicted Crooks, Viscardi, and Sgro, charging them with both extortion and conspiracy to commit extortion. Sgro, who did not appear at trial, is presently a fugitive. Crooks and Viscardi were tried. The jury found Crooks not guilty of extortion, but guilty of conspiracy; it found his co-defendant Viscardi not guilty on both counts. Crooks now appeals.

Crooks' arguments on this appeal have required us to examine the record with care, measuring the facts and events it shows against well-established legal principles. Having done so, we conclude that the trial court's rulings were legally correct. Since the appeal presents no novel legal issue, we see no need to describe the underlying facts and arguments in detail. Instead, we shall write only enough to indicate the reasoning that underlies our decision.

■ 1. Crooks' most important arguments arise out of the fact that his codefendant Viscardi introduced evidence designed to show that he (Viscardi) was not the instigator, but a victim, of the threats. Viscardi did not directly deny that Crooks did what the government charged, but he argued that any threats were part of a plan involving the missing Sgro and another man called Polcari to take over the Cafe Mews. This fact, says Crooks, requires a new trial for 1) it shows a serious "variance" between the crime charged and the

crime proved, and 2) it shows that Viscardi should have been tried separately.

Crooks first points out that he was indicted for having made threats as part of a 'Viscardi-instigated conspiracy against Ferguson,' not as part of a 'Polcari-instigated conspiracy against Viscardi.' He says that the evidence showed the latter at worst and that we should not tolerate so large a variance between the conspiracy charged and the conspiracy shown. *See United States v. Flaherty*, 668 F.2d 566, 582 (1st Cir.1981) ("Variance in the proof is grounds for reversal ... when it affects the defendant's 'substantial rights' ... that he have sufficiently specific information about the charges against him so that he can prepare an effective defense and will not be surprised at trial ....") (citations omitted).

The flaw in Crooks' claim lies in the fact that, contrary to Crooks' contention, the evidence was sufficient for the jury reasonably to have found that Crooks' threats were made

> in order to induce the said Albert Ferguson to cease rendering disc jockey services to Daisey's Restaurant and Lounge and to provide such services only to the Cafe Mews

—precisely the conspiracy charged. Ferguson, for example, testified that Sgro said that he didn't like Ferguson's working anywhere but the Cafe Mews and that he had paid Crooks and the others to break up Daisey's and Ferguson's equipment. Ferguson added that during the meeting at the Cafe Mews Crooks said to him: "I don't know what you're smiling about, but you're not going to like me by the time this night is over." Ferguson's wife, Kristin, added that Sgro asked her why Ferguson wasn't working at the Cafe Mews and that Sgro said that if he heard that Ferguson was working anywhere but the Cafe Mews "there would be no more talking." She added that Crooks and the other men acted at Sgro's command, and that Crooks had said "We came here to take care of [Ferguson]." The jury might have believed this evidence, disbelieved any contrary evi-

dence, and on this basis convicted Crooks of the conspiracy charge.

Crooks' real claim is that, although the jury *might* have believed this evidence, it did not believe it in fact. And, the proof that it didn't lies in the fact that it acquitted Viscardi. Why, says Crooks, would the jury have acquitted Viscardi unless it thought the conspiracy was aimed at him, instead of his being its instigator? And, he adds, an "anti-Viscardi conspiracy" is not the conspiracy that the indictment against both him and Viscardi charged.

▮ We reject this claim, however, for two reasons. First, Viscardi's acquittal is not inconsistent with Crooks' conviction. As a matter of pure logic, Sgro might have wanted *both* to keep Ferguson from working at Daisey's (or anywhere but the Cafe Mews) *and* to take over the Cafe Mews. The jury's doubt about the extent of Viscardi's participation does not logically require one to doubt Sgro's immediate object in threatening Ferguson or Crooks' participation. Second, in any event, courts do not hold juries to a standard of strict logical consistency when they convict one co-conspirator while acquitting codefendants. *Harris v. Rivera*, 454 U.S. 339, 345, 102 S.Ct. 460, 464, 70 L.Ed.2d 530 (1981) (per curiam); *Hamling v. United States*, 418 U.S. 87, 101, 94 S.Ct. 2887, 2899, 41 L.Ed.2d 590 (1974); *United States v. Dotterweich*, 320 U.S. 277, 279, 64 S.Ct. 134, 135, 88 L.Ed. 48 (1943); *United States v. Cyr*, 712 F.2d 729, 732 (1st Cir.1983); *United States v. Rios Ruiz*, 579 F.2d 670, 677 (1st Cir. 1978). Such inconsistency in and of itself no more proves equal innocence than equal guilt. And, a rule requiring absolute consistency could at least sometimes lead juries to convict "borderline" codefendants despite doubts rather than free defendants who are undoubtedly guilty. Regardless, as we have just said, the evidence aimed at proving Viscardi himself a victim was not strong enough to require the jury to acquit Crooks of being part of a conspiracy to threaten Ferguson.

▮ Crooks also argues that the pro-Viscardi evidence created a conflict between him and his codefendant Viscardi sufficient to require the judge to sever his trial from that of Viscardi. Whether to grant such a severance, however, is up to the trial court. *United States v. Cox*, 752 F.2d 741, 746 (1st Cir.1985); *United States v. Bautista*, 731 F.2d 97, 99–100 (1st Cir. 1984); *United States v. Davis*, 623 F.2d 188, 194 (1st Cir.1980). We will set aside the district court's decision only on a "strong showing of prejudice," *United States v. Cox*, 752 F.2d at 746 (quoting *United States v. Lochan*, 674 F.2d 960, 967 (1st Cir.1982)); *United States v. Arruda*, 715 F.2d 671, 679 (1st Cir.1983), only where it deprives a defendant "of a fair trial, resulting in a miscarriage of justice." *United States v. Arruda*, 715 F.2d at 679; *United States v. Davis*, 623 F.2d at 194. Such is not the case here.

▮ Viscardi sought to establish the existence of an anti-Viscardi conspiracy; he did not claim that Crooks was part of it. His defense was not consistent with the government's case against both defendants, but a jury could have believed some, or most, of it without that fact making them more likely to convict Crooks. Indeed, Viscardi testified that he could not recall seeing Crooks before the trial—testimony that, if believed, would have helped Crooks. The conflict between the defenses presented by Crooks and Viscardi was not so severe that it "alone establishes the guilt of the defendant." *United States v. Arruda*, 715 F.2d at 679. Nor were the defenses basically "so inconsistent that the jury would have to believe one defendant at the expense of the other." *Id.* The added Viscardi defense made the trial more complex. And, it increased the likelihood that the jury would confuse which evidence was admissible as to which defendant. But, these sorts of factors are precisely those that the trial court is charged with weighing. We have found in the record no prejudice to Crooks sufficient to overturn the considered judgment of the trial court.

▮ 2. Crooks claims that the government violated the Constitution's due

process clause because it did not indict him until January 1984, three and one-half years after the crime was committed. U.S. Constit. Amend. V. An indictment brought within an applicable statute of limitations period is, constitutionally speaking, late only if the delay significantly prejudices the defendant and the government "intentionally delayed" the indictment "to gain an unfair tactical advantage or for other bad faith motives." *United States v. Marler,* 756 F.2d 206, 215 (1st Cir.1985). Crooks' claim of prejudice consists of the fact that a witness, now dead, might have testified that he went to North Conway for innocent reasons. Having examined the offer of proof in light of the record, we doubt that the delay significantly prejudiced Crooks. Regardless, the record does not indicate that the government delayed the indictment for 'bad faith' reasons. The government states, without contradiction from Crooks, that any delay resulted from its efforts to discover all those who participated in the conspiracy and to try them together. And, this reason, in context, provides a legitimate explanation.

■ 3. Crooks argues that statements that he made to an FBI agent, prior to his arrest, should have been suppressed as the 'products of coercion.' *Hutto v. Ross,* 429 U.S. 28, 30, 97 S.Ct. 202, 203, 50 L.Ed.2d 194 (1976); *Beckwith v. United States,* 425 U.S. 341, 347–48, 96 S.Ct. 1612, 1616–17, 48 L.Ed.2d 1 (1976). The issue here is purely factual; and it depends wholly on credibility. Crooks says the agent threatened to tell others he was cooperating with the police—a rumor that might have led to Crooks' death. The FBI agent denies making any such threat. The district court, while disbelieving a portion of the FBI agent's story, believed his denial. We find no basis in the record to overturn this credibility conclusion. *See United States v. Kimball,* 741 F.2d 471, 474 (1st Cir. 1984). That being so, the finding of 'no coercion' has adequate record support.

■ 4. Crooks claims that the evidence that he and Sgro were coconspirators was insufficient to allow the government to introduce Sgro's hearsay statements against him. *United States v. Ciampaglia,* 628 F.2d 632, 637 (1st Cir.1980); *United States v. Petroziello,* 548 F.2d 20, 23 (1st Cir. 1977). We do not agree. One independent witness, Debbie Kneeland, testified that on August 14 Crooks, Sgro and two other men met in Massachusetts, drove in two cars to North Conway, and met there again. Kristin Ferguson testified that at the Cafe Mews meeting on the night of August 14 Crooks said (referring to Ferguson): "We came here to take care of him. Let's do it and get the fuck out of here." A third witness, FBI agent Jordan, testified that Crooks told him that a friend had asked Crooks to go to North Conway to stand by someone so that that person could have his way in a particular matter. This evidence, in context, was sufficient to show, more likely than not, that Crooks and Sgro were part of the same conspiracy. In addition, Sgro indicated to Albert and Kristin Ferguson that he had to pay Crooks and the other men to break up Albert's sound equipment, that the men would "take care" of Albert, that one of the men was a "pro" marksman, and that one of the men there would break Albert's arms or fingers or shoot him if ordered to. These statements, though hearsay, may also be taken into account in deciding whether the *Petroziello-Ciampaglia* tests are met. *United States v. Martorano,* 557 F.2d 1 (1st Cir. 1977), *cert. denied,* 435 U.S. 922, 98 S.Ct. 1484, 55 L.Ed.2d 515 (1978).

■ 5. Crooks claims that Sgro's statements should not have been admitted because the government did not make a "good faith effort to obtain his presence at trial." *Ohio v. Roberts,* 448 U.S. 56, 74, 100 S.Ct. 2531, 2543, 65 L.Ed.2d 597 (1980). But, Sgro was a fugitive and the government had issued a warrant for his arrest. Those facts adequately refute Crooks' claim.

■ 6. Crooks argues that the trial court should have granted immunity to a "Mr. X" who would have provided exculpatory information. The government opposed the grant on the grounds 1) that it

generally opposes grants of immunity, and 2) that to be more specific, it had to know who "Mr. X" is. Under the circumstances revealed in the record, these grounds of opposition adequately support the trial court's decision to deny immunity. *See United States v. Davis,* 623 F.2d 188, 193 (1st Cir.1980).

7. Crooks points to several instances of what he characterizes as prosecutorial misbehavior, which, taken together, he says, deprived him of a "fair trial." *See United States v. Maccini,* 721 F.2d 840, 846 (1st Cir.1983); *United States v. Capone,* 683 F.2d 582, 585–87 (1st Cir. 1982). The most serious examples consist of instances in which the prosecutor made statements describing Crooks as an "enforcer," a "muscle man," or in one instance as seen in "an area where there's crime." In his brief, Crooks lists three instances in which such statements were made (leaving aside characterizations not pertaining to Crooks or made out of the presence of the jury): a) Following defense counsel's cross-examination of the local police chief about the failure of the police to question people at the Cafe Mews, the prosecution asked the police chief whether his department was used to "dealing with muscle men or enforcers." b) In closing argument, the prosecuting attorney referred to Crooks "and his enforcer friends .... The guys who got into the car with the ENFORCER license plates." c) In closing argument, the prosecuting attorney stated that it was natural for agent Jordan to be in the "Combat Zone" of Boston (where he saw Crooks) because that is "an area where there's crime."

In the first two instances, however, the characterizations were not so obviously improper as to require a conclusion of prosecutorial 'bad faith.' Crooks' car, for example, had the word "Enforcer" written on its front license plate, and the prosecutor referred to that fact in identifying the car and its occupants. This type of characterization was at least arguably relevant as well to show the state of mind of those at the Cafe Mews meeting or to explain an

apparently inadequate state police investigation. In the third instance (and in other instances in which characterizations were not relevant or were overly prejudicial), the trial court sustained objections and cautioned counsel. For example, the court excluded testimony that would have associated Crooks and the word "Mafia." Given the cautionary instructions, and the arguable relevance, we cannot find that the characterizations actually used were either deliberate or prejudicial to the point of showing severe prosecutorial misconduct or unfairness requiring a new trial. *United States v. Cox,* 752 F.2d at 745. Crooks points to certain other instances of what he calls "misconduct," but they are trivial, and, when added to the 'characterizations,' do not change the result.

8. We reject Crooks' other claims, which we find insubstantial.

For these reasons, the judgment of the district court is

*Affirmed.*