934 F.2d 320
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Tommy Lee BYNUM, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ronald S. TILLMAN, Defendant-Appellant.
 Nos. 90-5016, 90-5019.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 11, 1991.
Decided May 28, 1991.
 
 Appeals from the United States District Court for the District of South Carolina, at Columbia. Solomon Blatt, Jr., Senior District Judge. (CR-89-6)
 Jennifer Kneece Shealy, Columbia, S.C., (argued), for appellant Tillman. Jack B. Swerling, Columbia, S.C., (argued), for appellee, on brief.
 Parks Nolan Small, Federal Public Defender, Columbia, S.C., for appellant Bynum.
 Alfred William W. Bethea, Assistant United States Attorney, Columbia, S.C., (argued), for appellee; E. Bart Daniel, United States Attorney, Columbia, S.C., on brief.
 D.S.C.
 AFFIRMED.
 Before ERVIN, Chief Judge, NIEMEYER, Circuit Judge, and JOSEPH H. YOUNG, Senior District Judge for the District of Maryland, Sitting by Designation.
 PER CURIAM:
 
 
 1
 Ronald Tillman and Tommy Lee Bynum were convicted of armed bank robbery and use of a weapon to commit a crime of violence. Tillman was sentenced to twenty years imprisonment on the armed robbery count and five years for the weapons count. Bynum was sentenced to three years on the armed robbery count and five years for the weapons count.
 
 
 2
 Tillman raises eleven issues on rulings of evidence and, in addition, contends that the sentencing judge erred in departing upward. Bynum challenges the district court's refusal to sever his trial. Because we find no reversible error, we affirm.
 
 
 3
 * At trial, Tillman expressed the intention of calling his mother as a witness to testify that he was at home with her at the time that another witness placed him at a motel dividing up the bank robbery money. He also proffered that his mother would testify that he had a source of income as an employee of the Party Shop and as an entertainer and boxer and that he did not own a jacket and sneakers fitting the description given of the bank robber. J.A. 421-22. The government apparently advised counsel for Tillman that if Tillman's mother were called to testify, the government would cross-examine her on testimony given by her to the grand jury and on the contents of a tape recorded conversation between her and Rufus McQueen. McQueen had been wired before having a conversation with Tillman's mother because it was anticipated that his mother was assisting Tillman in having a cooperating witness, Hayes Malloy, murdered.
 
 
 4
 The court stated to the parties that if Mrs. Tillman were called, the court would permit the government's cross-examination on these points. Because of the advisory ruling, Tillman advised the court that he would not call his mother as a witness. He contends that the court's advisory ruling was erroneous because the cross-examination of Mrs. Tillman about her grand jury testimony and her participation in a murder plot would constitute "extrinsic evidence" offered for the purpose of attacking the witness's credibility in violation of Fed.R.Evid. 608(b). The government contends that the cross-examination could have properly been permitted because the decision fell within the discretion of the court, particularly when the court indicated that it would not permit the government to inquire directly about the murder scheme itself.
 
 
 5
 Because Tillman's mother never took the witness stand, it can only be speculated now about what would have been asked and whether any cross-examination on these subjects could have been appropriate. Tillman made a strategic decision in view of the advisory ruling not to call her, and therefore he presented nothing that can be ruled on. While the advisory ruling given by the court might have been well intended to assist the defendant in making strategic trial decisions, its questionable correctness in light of Fed.R.Evid. 608(b) presents the unfortunate problem that Tillman made a strategic decision in reliance on it. Yet, more problematic is the practical problem that we have no record on which to review the issue. For this reason it has been well established that a court will not review hypothetical evidentiary rulings which have not been preserved by objections to actual questions. See Luce v. United States, 469 U.S. 38 (1984). Therefore we must reject Tillman's challenge to the court's rulings.
 
 
 6
 Even were the evidentiary ruling presented, Tillman would be hard pressed to show prejudice. The evidence against him, from other witnesses was overwhelming. Clarence "Gabby" Wells testified that while riding around with Tillman the night before the bank robbery, he saw Tillman with a sawed-off shotgun such as was used in the bank robbery. Hayes Malloy testified that Tillman had expressed to him the intent to rob the bank in question. Sheila Scott, the bank teller who was face to face with the robber, testified that, even though he was wearing a ski mask, she recognized him as Tillman whom she knew to be the Ron Tillman who ran the Party Shop on Bluff Road. Malloy testified that after the robbery Tillman admitted to him robbing the bank and that he proceeded with Tillman and Bynum to the Heart of Columbia Motel where the robbery proceeds were divided. Evidence was also offered from two other witnesses that Bynum had admitted participating in the bank robbery that day.
 
 
 7
 Tillman challenged ten other evidentiary rulings, all of which we have carefully reviewed. We find that none constituted an abuse of the broad discretion given to the trial judge to govern the admissability of evidence. Accordingly, we reject each contention that reversible error was committed in the evidentiary rulings and affirm Tillman's conviction.
 
 II
 
 8
 Tillman also contends that the district court erroneously departed upward in sentencing him. The Sentencing Guidelines for his offense provides a sentencing range of 77 to 96 months and the court sentenced him to 240 months. He contends the court did not properly articulate its grounds for departure and acted unreasonably in the magnitude of departure. He reasons that the district court's general characterization of him as "extremely dangerous" was a factor already taken into account in the guidelines for his offense and did not justify a departure.
 
 
 9
 Our review of the record reveals that factors of the degree presented here were not embraced in the guidelines and that, because of the uniquely aggravating circumstances, the departure was not unreasonable. Although Tillman was convicted in the federal court of armed bank robbery and use of a weapon in committing a crime of violence, the relevant conduct was far more sinister. The larger criminal scheme began in September 1988 when Tillman and two other individuals, including Donald Sutton, were arrested by state authorities and charged with armed robbery of a Burger King restaurant. When Sutton agreed to become a cooperating witness against Tillman, Tillman apparently advised Hayes Malloy that Tillman needed to rob a bank to generate enough cash so that he could have Donald Sutton killed. Tillman offered Malloy a fee of $5,000 to carry out this murder. When Malloy would not do it, Malloy witnessed Tillman actually shoot Sutton in late December, 1988. Both Tillman and Malloy were charged in state court with Sutton's murder.
 
 
 10
 Following Tillman's arrest and incarceration, government authorities were advised by Rufus McQueen that Tillman sought McQueen's assistance in killing two potential adverse witnesses, Malloy and the bank teller. Tillman told McQueen that Tillman's mother would pick McQueen up at the jail and take McQueen to the Party Shop where someone would identify Malloy for him. When McQueen contacted law enforcement authorities, a body tape was arranged documenting the meeting between Tillman's mother and McQueen. Although Malloy's murder was thus frustrated, Sutton's was not, and Tillman was subsequently convicted in state court for the murder.
 
 
 11
 With this background in mind the district judge characterized the relevant conduct of Tillman as follows:
 
 
 12
 Well, I don't believe that the defendant takes into consideration the total picture of this. I watched him. I watched his witnesses. They think he threatened--I'm convinced beyond a reasonable doubt he threatened person after person.
 
 
 13
 He's dangerous. Law and order don't mean anything to him. Life doesn't mean anything to him. If there's any person that I've ever seen in 19 years who should receive--who should have a departure upward, and for whom there's no--you couldn't write the Guidelines strong enough to take care of him, this defendant who commits this, and who has an utter and total disregard for the law. That's my feeling about it.
 
 
 14
 And I'm normally--I'm normally--well, "compassion," that is not a good word. I'm normally lenient. I'm normally lenient. If anybody has anything good to bring on, I would, and I give them that consideration and concern. And I think somebody who's done something bad, but has had a good life, and he shouldn't be--if you're going to sentence somebody like that, I think you've got--you can't leave the good behind and just take the bad. I mean, I believe that, and I sentence people with that in mind.
 
 
 15
 I don't see anything good in this defendant. I just see a vicious criminal who's got a total and utter disregard for law and for human life. And if ever an upward departure is warranted, it's warranted in this case, and I'm going to apply an upward departure.
 
 
 16
 J.A. 761-62.
 
 
 17
 In view of the extraordinary record in this case which shows aggravating circumstances, we conclude that a departure was justified under U.S.S.G. Secs. 5K2.0 and 5K2.9. and that the departure in this case was not unreasonable.
 
 III
 
 18
 Bynum contends separately that the district court erroneously denied his motion to sever his trial from that of Tillman. He argues that a denial of his motion effectively denied him the right to cross-examine Hayes Malloy on his involvement in a pending murder charge in state court and on conflicting statements made by Malloy in relation to the murder. Because Bynum was tried with Tillman and Tillman was also charged in state court with the same murder, the court had to deny counsel for Bynum any opportunity to question Malloy on his involvement in the murder so as not to prejudice Tillman. In particular, counsel for Bynum proffered three statements by Malloy about the murder which counsel contends were fabricated and which he believes would show that Malloy was capable of fabricating stories about the armed robbery.
 
 
 19
 Because the federal bank robbery charges were a part of the larger criminal scheme, which included the state court murder for which both Tillman and Malloy were charged, the task of the district court in restricting the evidence to that which was probative of the bank robbery and at the same time in allowing the parties sufficient breadth of cross-examination, was a difficult one. It is understandable that Bynum would have wanted more latitude on cross-examining Malloy about his role in the murder and his statements about it, and good faith differences of opinion might be held by different district courts whether a severance should have been granted to permit the broader cross-examination.
 
 
 20
 While the Sixth Amendment right to confront Malloy includes a right to effective cross-examination, that right is not limitless. See U.S. v. Owens, 484 U.S. 554, 557 (1988). The district court retains a wide latitude to impose reasonable limits on crossexamination. See Delaware v. Van Arsdall, 475 U.S. 673 (1986).
 
 
 21
 Here the district court did permit counsel for Bynum broad rights of cross-examination of Malloy, including examination into pending charges against him for assault with intent to murder and prior inconsistent statements made by him to law enforcement personnel. Moreover, even had the trial been severed, Malloy had not at the time of trial been convicted of murder and Fed.R.Evid. 609 would not apply to permit inquiry into a felony not yet established. The district court also might be required to exclude the cross-examination desired by Bynum under Fed.R.Evid. 608(b). Thus, the right to conduct an examination on Malloy's involvement in a murder charge not yet proven in court might legitimately have been questioned, even with a severance. Although the question raised by Bynum on the appropriateness of the denial of the motion to sever is not free from doubt, because Malloy was an important witness, we are satisfied, after a close review of the record, that the district court did not abuse its discretion in denying the motion. See United States v. Becker, 585 F.2d 703 (4th Cir.1978), cert. denied, 439 U.S. 1080 (1979). In order to mandate reversal, the denial of the motion to sever must deprive the defendant of a fair trial and result in a miscarriage of justice. Id. at 707. In this case we do not conclude that the defendant was denied a fair trial or that the denial of the motion to sever resulted in a miscarriage of justice.
 
 
 22
 For the reasons given, therefore, we affirm the judgments of convictions against both Tillman and Bynum.
 
 
 23
 AFFIRMED.