UNITED STATES of America,
Plaintiff-Appellee,

v.

Gerardo Adolf VILLARREAL,
Defendant-Appellant.

No. 84–1847.

United States Court of Appeals,
Fifth Circuit.

Aug. 16, 1985.

Charles T. Conaway and Charles J. Lieck, Jr., San Antonio, Tex., for defendant-appellant.

Helen M. Eversberg, U.S. Atty., J.W. (Bill) Blagg, Asst. U.S. Atty., San Antonio, Tex., Vincent L. Gambale and Maury S. Epner, App.Sec., Crim.Div., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before BROWN, POLITZ and JOLLY, Circuit Judges.

## PER CURIAM:

Following this court's opinion affirming his conviction, Villarreal petitions us to reconsider our decision. Having carefully considered Villarreal's petition for rehearing, we must again affirm his conviction.

Villarreal's petition places particular emphasis on what the petitioner characterizes as this court's misapprehension of the significance of the evidence against him. Because we are aware that the consequences to Villarreal of our decision will be most serious, and because of the petitioner's manifest dissatisfaction with our appraisal of the evidence, we set out below our response to what the petition for rehearing takes as our more serious misapprehensions of the evidence.

 First, we must stress that on appeal from a criminal conviction it is not the task of this court to reevaluate the evidence *de novo;* that is a function reserved for the

trial court. Rather, in evaluating the sufficiency of the evidence supporting a conviction, we must interpret the evidence in the light most favorable to the state; we must resolve all conflicts in the evidence in favor of the state; and, in addition, we must give the state the benefit of every inference which might reasonably be made from the evidence when it is construed so favorably to the state. In particular, where the evidence takes the form of testimony, we must resolve all credibility determinations against the convicted appellant. While all of the above is absolutely standard, we reiterate it once again because Villarreal's petition for rehearing undertakes a substantial rearguing of the evidence, as discussed below.[1]

Villarreal challenges our observation that Chavana testified that he gave money to Villarreal in August 1981; the petition characterizes our statement as "totally inaccurate." Villarreal contends that Chavana testified that he gave the petitioner money only in September or October of 1981.

We draw attention to Chavana's testimony on redirect examination by Mr. Conaway:

Q. Prior to that time, did Mr. Villarreal have any knowledge, as far as you know, about any massage parlor activities up until the time you told him?

A. I have no idea other than until the time I told him.

Q. That's what I mean. If he knew about it from some other course, well, that's one thing, but I mean so far as you know, did he know about it from any other source?

A. Not that I know of.

Q. Now, the day whenever you tell us that you gave Mr. Villarreal the money,

---

1. "Reviewing a conviction for sufficiency of the evidence requires this Court to view the evidence, including all inferences that may be reasonably drawn from it, in the light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). 'It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided that a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt.' *United States v. Bell,* 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc)." *United States v. Carter,* 721 F.2d 1514 (11th Cir.1984).

and he gave it back, can you tell us what date it was?

A. No, sir.

Q. All you can tell is it was 1981. That's about as close as you can get, the fall of 1981?

A. In August, I believe it was.

Q. And in the time, as I understand it, first time you gave him the money, he gave it back to you. How much time passed from the time that you gave him the money, and he returned it, and you gave him money a second time?

A. It was the next day. I believe it was either—it was in September, somewhere in there. I really don't remember, one of those months.

Q. All right, sir. It was either August or it was September, but you're not sure?

A. Yes.

A reasonable jury could choose to interpret Chavana's testimony as indicating he gave money to Villarreal as early as August 1981; this court need not determine independently that the transaction occurred in August; we only resolve this conflict in the evidence in favor of the state.

Villarreal also objects, in his words, to this court's "infer[ring] in its opinion that C.B. Moore was 'raided' because he refused to pay Chavana." Again, we must point out that this court does not infer conclusions from the record *de novo;* rather, we ask only whether a reasonable jury *could have* considered the fact that Moore was raided after refusing to "pay up" as evidence of the conspiracy. That *other* explanations for the "raid" may *also* be reasonable is not sufficient ground for us to determine a jury could not reasonably consider these events to be evidence of the conspiracy.

Similarly, Villarreal objects to our characterization of Shallotte Slade's arrest soon after she refused to make payments as evidence of the conspiracy; Villarreal points out that Slade testified she was arrested for a "robbery of some sort." Once again, that another reasonable explanation exists does not eliminate the possibility that a reasonable jury *could* view the arrest of a woman who refused to pay off the authorities as significant evidence of a conspiracy.

The petitioner also challenges our interpretation of Reidel's testimony that Chavana told her in Villarreal's presence that she could make payments to Villarreal instead of Chavana if the need arose. Villarreal points out that on cross-examination Reidel testified that Chavana didn't say what the payments were for; Villarreal characterizes Reidel as retracting her prior statement. However, the mere fact that Reidel testified that Chavana had not said what the payments were for is not inconsistent with her testimony that Chavana said she could make payments to Villarreal. Moreover, we must again point out that the issue here is whether a reasonable jury could interpret this testimony as significant evidence.

In summary, Villarreal's objections to our analysis of the evidence are not well taken. We conclude that the evidence objected to in the petition for rehearing, together with the other evidence presented at trial, is sufficiently substantial for a reasonable jury to find Villarreal guilty as charged beyond a reasonable doubt.

In addition, we have reviewed the petitioner's objections to our interpretation of the relevant precedent, but we cannot agree with him in his interpretation of those cases.

PETITION DENIED.