UNITED STATES of America, Appellee,

v.

**Russell E. SPITLER, Appellant.**

UNITED STATES of America, Appellee,

v.

**Duane CARPENTER, Appellant.**

**Nos. 85–5114, 85–5134.**

United States Court of Appeals, Fourth Circuit.

Argued Dec. 6, 1985.

Decided Sept. 12, 1986.

---

Andrew Jay Graham (Kramon & Graham, P.A., on brief), for appellant Duane Carpenter.

Gerard P. Martin (Ethan L. Bauman, on brief), for appellant Russell E. Spitler.

James Barr Moorhead, Asst. U.S. Atty. (Catherine C. Blake, U.S. Atty., on brief), for appellee.

Before WINTER, Chief Judge, RUSSELL, Circuit Judge, and SWYGERT, Senior United States Circuit Judge for the Seventh Circuit, sitting by designation.

DONALD RUSSELL, Circuit Judge:

Russell E. Spitler and Duane Carpenter, defendant-appellants, appeal from judgments of conviction entered upon a guilty verdict of extortion and aiding and abetting extortion in violation of 18 U.S.C. §§ 1951 and 2,[1] conspiracy to commit extortion in violation of 18 U.S.C. § 1951, and mail fraud and aiding and abetting mail fraud in violation of 18 U.S.C. §§ 1341 and 2. Seeking reversal of their convictions, defendants claim the district court erred in denying their motions for severance and for judgments of acquittal. Additionally, Spitler claims error in the district court's failure to give a requested jury instruction. Rejecting defendants' contentions, we affirm the judgments of the district court.

*Background*

Carpenter is the former Chief of the Metals Unit of the Maryland State Highway Administration, and Spitler is the Vice President of Transeastern Inspection, Inc. ("TEI"), which provided quality-assurance inspections for the Metals Unit on highway projects between 1979 and 1983. During this period, Carpenter demanded and received from TEI employees various items of value, including semi-automatic rifles, untraceable handguns, and jewelry. In many instances, Spitler authorized TEI employees to accede to Carpenter's demands and purchase the items with TEI funds. On some occasions, however, Spitler expressed hostility toward Carpenter's demands and advised TEI employees not to comply, or to delay complying, with the demands.

Spitler complied with Carpenter's demands both before and after July of 1980, when TEI as low bidder was awarded the contract to provide quality-assurance inspection services on steel tunnel sections for the Interstate Highway 95 Fort McHenry-Baltimore Harbor Tunnel extension, a ninety-percent federally funded project. Among Carpenter's responsibilities was to

---

1. Although the government indicted both defendants for extortion and aiding and abetting extortion in Counts One, Two and Four, the government concedes that under the circumstances of this case, defendant Spitler could only have been found guilty of aiding and abetting extortion.

verify and approve for payment invoices submitted by TEI, which billed the State of Maryland on an hourly basis. TEI's contract placed no limit on the number of hours that it could bill for inspection services. As a result, Carpenter agreed with Spitler—who until sometime in 1981 received from TEI a three percent commission on TEI's Maryland billings—to approve inflated invoices reflecting time not actually worked by TEI employees. The invoices also reflected unnecessary overtime charges. TEI had mailed the fraudulent invoices to Carpenter, who approved them in each instance. On one occasion, Carpenter threatened to cut TEI's hours, but never carried out the threat.

After a federal audit of the tunnel project had started in 1982, Spitler and TEI employee Ronald Dunn feared the auditors would find records reflecting time that Dunn had charged to Maryland when he had been in Texas, so they burned Dunn's records in the fireplace of their condominium. Moreover, following the auditors' final report indicating excessive quality-assurance billings, Carpenter was relieved of his invoice approval authority and the amount of TEI billings significantly declined.

Carpenter was convicted of four counts of violating 18 U.S.C. § 1951 for having extorted from TEI, through the wrongful use of the fear of economic injury and under color of official right, an Uzi semi-automatic weapon and accessories, an untraceable .357 Magnum revolver and ammunition, a lady's diamond ring, and a one-hundred-ounce silver bar. Spitler was convicted under 18 U.S.C. §§ 2 and 1951 on three counts for having aided and abetted the extortion of the Uzi, the .357 Magnum, and the ring, all of which were extorted after defendants had commenced overbilling the State. Additionally, each defendant was convicted of one count of conspiracy to commit extortion from August 1979 through February 1983 in violation of section 1951 and of nine counts of mail fraud and aiding and abetting mail fraud in violation of 18 U.S.C. §§ 1341 and 2.

*Severance*

Claiming mutually antagonistic and irreconcilable defenses, defendants initially assert error in the district court's denial of their motions for separate trials under Federal Rule of Criminal Procedure 14. At a hearing on the severance motions, Spitler's counsel indicated that Spitler definitely would testify at trial, and counsel proffered the following testimony of Spitler:

He will say ... that during the years that he was the general manager of TEI, the years that are covered by this indictment, that he never offered, he never approached Mr. Carpenter and offered him anything. That it was Mr. Carpenter who came to Mr. Spitler through Mr. Spitler's employees with his hand out saying give me this, give me that. And that Mr. Carpenter had a reputation for doing that in business. Mr. Spitler, this will be Mr. Spitler's testimony that knowing that reputation, Mr. Spitler approved the payments of certain things to Mr. Carpenter because he did [not] want the job to be interfered with.

Neither Carpenter nor his counsel appeared at the hearing on the severance motions. Carpenter relied on his written motion in which he, like Spitler, claimed prejudice from antagonistic, irreconcilable defenses. In his motion, however, Carpenter made no proffer other than an "assertion of innocence" to which he would feel coerced to testify if Spitler would take the stand.

At trial, defendants chose to call no witnesses and to present no evidence. Instead, defense counsel presented arguments of a largely consistent defense. In his opening statement, Carpenter's counsel claimed that the items furnished to Carpenter were gifts for services that Carpenter had performed for TEI. Likewise, in his opening remarks, Spitler's counsel indicated that although Carpenter had asked for the items, Spitler agreed to provide the items because "Carpenter was owed something for what he did" and because Spitler wanted no trouble on the job. In closing argument, moreover, counsel for Spitler declared that the items provided to Carpenter

were compensation for Carpenter's consulting services to TEI on non-Maryland jobs and that "the evidence doesn't show extortion. The evidence shows no extortion at all...." Further, cross-examination by Spitler's counsel promoted the defense that Carpenter was entitled to the articles for consulting work and that such items were treated openly. Through cross-examination and argument, Spitler also sought to minimize Carpenter's involvement in the tunnel project in an apparent effort to show that Carpenter would have been more actively involved with the project had the defendants entered a scheme to defraud.

Despite the consistency of their arguments, both defense counsel reiterated their severance motions by seeking a mistrial based on allegedly antagonistic remarks in the opening statements. Spitler's lawyer also made a similar motion the second day of trial, claiming prejudice from a government witness' direct testimony that Carpenter had sought untraceable firearms. The district court denied each request for severance and mistrial.

On appeal, defendants' essentially raise three arguments in support of their claim that the district court erroneously denied severance. First, Spitler and Carpenter contend they made a sufficient pretrial showing of irreconcilable defenses because "[t]he potential for prejudice was clear prior to trial when Defendants initially moved for severance." Defendants also contend that severance was required because in the opening statement and closing argument, Spitler's counsel made some reference to Spitler having been an unwilling victim of extortion. Such occasional assertions of an extortion, contend defendants, inculpated Carpenter and reflected mutually antagonistic, irreconcilable defenses. Lastly, defendants implicitly claim that the potential for undue prejudice from irreconcilable defenses precluded them from presenting evidence and, as a result, deprived them a fair trial. As discussed below, we consider defendants' arguments unmeritorious.

▉▉ Primarily due to "the need for efficiency in judicial administration," *United*

*ed States v. Shuford,* 454 F.2d 772, 776 (4th Cir.1971), "[g]enerally, where the indictment charges a conspiracy, or a crime having a principal and aider-abettors, the rule is that persons jointly indicted should be tried together." *United States v. Kahn,* 381 F.2d 824, 838 (7th Cir.), *cert. denied,* 389 U.S. 1015, 88 S.Ct. 592, 19 L.Ed.2d 661 (1967). *See also Shuford, supra; United States v. Parodi,* 703 F.2d 768, 779 (4th Cir.1983); *United States v. Lurtz,* 666 F.2d 69, 80 (4th Cir.1981), *cert. denied,* 459 U.S. 843, 103 S.Ct. 95, 74 L.Ed.2d 87 (1982). Nevertheless, "[i]f it appears that a defendant ... is prejudiced by a joinder of ... defendants in an indictment or ... for trial together, the [district] court may ... grant a severance of defendants or provide whatever relief justice requires." Fed.R.Crim.P. 14. "[T]he mere presence of hostility among defendants," however, "or the desire of one to exculpate himself by inculpating another [are] insufficient grounds to require separate trials," *United States v. Ehrlichman,* 546 F.2d 910, 929 (D.C.Cir.1976) (quoting *United States v. Barker,* 442 F.2d 517, 530 (3d Cir.), *cert. denied,* 404 U.S. 958, 92 S.Ct. 327, 30 L.Ed.2d 275 (1971)), *cert. denied,* 429 U.S. 1120, 97 S.Ct. 1155, 51 L.Ed.2d 570 (1977), and thus, "[a]ntagonistic defenses do not *per se* require severance even if the defendants ... attempt to cast the blame on each other." *United States v. Becker,* 585 F.2d 703, 707 (4th Cir.1978), *cert. denied,* 439 U.S. 1080, 99 S.Ct. 862, 59 L.Ed.2d 50 (1979). *See also United States v. Haldeman,* 559 F.2d 31, 71 (D.C.Cir. 1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977). Accordingly, to be entitled to a severance, a defendant must show more than "merely that a separate trial would offer him a better chance of acquittal." *Parodi,* 703 F.2d at 780. *See also United States v. Potamitis,* 739 F.2d 784, 790 (2d Cir.1984), *cert. denied,* 469 U.S. 918, 934, 105 S.Ct. 297, 332, 83 L.Ed.2d 232, 269 (1984). Moreover, the decision to deny severance, which is within the sound discretion of the district judge, will not be overturned unless the defendant affirmatively demonstrates a clear abuse of

discretion through having been deprived a fair trial and having suffered a miscarriage of justice. *Becker*, 585 F.2d at 706–07; *United States v. Frazier*, 394 F.2d 258, 260 (4th Cir.), *cert. denied*, 393 U.S. 984, 89 S.Ct. 457, 21 L.Ed.2d 445 (1968); *Parodi*, 703 F.2d at 780. To make such showing where severance has been sought "on the ground of conflicting defenses[,] it must be demonstrated that the conflict is so prejudicial that the differences are irreconcilable, 'and that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty.'" *Becker*, 585 F.2d at 707 (quoting *Ehrlichman*, 546 F.2d at 929 and *United States v. Robinson*, 432 F.2d 1348, 1351 (D.C.Cir.1970)). *See also United States v. Sellers*, 658 F.2d 230, 232 (4th Cir.1981). "Application of this standard ... is for the district court in the first instance, and reviewable here only for abuse of discretion...." *Haldeman*, 559 F.2d at 71. "Not surprisingly, the facts peculiar to each case will determine whether sufficient prejudice exists to make the denial of a severance reversible error." *Shuford*, 454 F.2d at 776.

The facts of the instant case, set out above, indicate no abuse of discretion by the district court. Although the defendants claim they made a sufficient pretrial showing of the requisite degree of potential prejudice from a joint trial, their presentations to the district court were far from adequate, displaying neither irreconcilable differences nor "that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty." *Becker*, 585 F.2d at 707. Carpenter's pretrial representation that he might testify and might make an "assertion of innocence" utterly failed to indicate a defense. The district judge thus was faced with a situation where Carpenter, at best, was speculating that he would assert a defense of a passive recipient of compensation or a passive donee. "Something more than mere assertion and speculation is required to support such a motion." *United States v. Wilson*, 434 F.2d 494, 499 (D.C.Cir.1970). *Accord United States v. Aloi*, 449 F.Supp. 698, 740 (E.D.N.Y.1977); *United States v.*

*Potamitis*, 564 F.Supp. 1484, 1486–87 (S.D. N.Y.1983), *aff'd*, 739 F.2d 784, 790 (2d Cir. 1984), *cert. denied*, 469 U.S. 918, 934, 105 S.Ct. 297, 332, 83 L.Ed.2d 232, 269; *United States v. Climatemp*, 482 F.Supp. 376, 387 (N.D.Ill.1979), *aff'd*, 705 F.2d 461 (7th Cir.), *cert. denied*, 462 U.S. 1134, 103 S.Ct. 3116, 77 L.Ed.2d 1370 (1983). *See Becker*, 585 F.2d at 707 ("Speculative allegations as to possible prejudice do not meet the burden of showing an abuse of discretion in denying a motion for severance"). A district judge is not required to be a mind reader in order to grant or deny a severance motion based on vague and conclusory representations that there might be some conflicting testimony of defendants. Where, as here, the defendant fails to state the nature of his defense and in what respect, if any, his defense is irreconcilable with that of his co-defendant, there is no basis to grant the defendant's motion for severance. *See United States v. Wheaton*, 463 F.Supp. 1073, 1077 (S.D.N.Y.), *aff'd*, 614 F.2d 1293 (2d Cir.1979); *United States v. Badr*, 604 F.Supp. 569, 582 (E.D.N.Y.1985); *United States v. Pellon*, 475 F.Supp. 467, 482 (S.D. N.Y.1979), *aff'd*, 620 F.2d 286 (2d Cir.), *cert. denied*, 446 U.S. 983, 100 S.Ct. 2963, 64 L.Ed.2d 839 (1980); *United States v. Marquez*, 319 F.Supp. 1016, 1018 (S.D.N.Y. 1970), *aff'd*, 449 F.2d 89, 93 (2d Cir.1971). *Accord United States v. Porter*, 764 F.2d 1, 14 (1st Cir.), *reh'g and reh'g en banc denied*, 776 F.2d 370 (1985).

Spitler's pretrial presentation was stronger than that of Carpenter, but similarly inadequate. Close examination of Spitler's testimony, as proffered by counsel, reveals that on the whole, it was a vague, abbreviated statement which in no way demonstrated irreconcilability of defendants' defenses or that from such conflict alone the jury would unjustifiably return guilty verdicts. *See Becker, supra; Ehrlichman, supra; Haldeman, supra.* Spitler's proffered testimony, although indicating that Carpenter came "with his hand out saying give me this, give me that," did not show that Carpenter was unentitled to the items. Neither Spitler's

proffer nor Carpenter's "assertion of innocence" foreclosed the possibility, which both defendants later argued at trial, that the payments were compensation for extra services that Carpenter allegedly had provided to TEI. Accordingly, as presented to the district court prior to trial, "[t]here would have been no logical inconsistency in the jury's acceptance of the defenses presented by both defendants." *United States v. Wright,* 783 F.2d 1091, 1094 (D.C. Cir.1986) (quoting *Ehrlichman,* 746 F.2d at 929.) The defenses expressed to the district court, therefore, were not irreconcilable and "simply were not at the requisite level of conflict" to require severance. *Haldeman,* 559 F.2d at 71. *See also Wright, supra; United States v. Arruda,* 715 F.2d 671, 679 (1st Cir.1983).

To be sure, Spitler's proffered testimony—that Carpenter had requested each item—likely would have been somewhat prejudicial to Carpenter, but such an attempt to cast blame on Carpenter would not require severance.[2] *Becker, supra; Ehrlichman, supra.* Spitler, moreover, failed to demonstrate, either in the district court or on appeal, prejudice to himself from Carpenter's defense. Indeed, at the pretrial severance hearing, Spitler only argued that his testimony would be prejudicial to Carpenter. Carpenter, however, apparently did not share Spitler's concern because neither Carpenter nor his counsel appeared at the hearing. In sum, defendants failed to present any actual substantiation for their allegations that the requisite degree of prejudice existed. *E.g., Wilson,* 434 F.2d at 499.

Defendants' weak presentations to the district court, therefore, indicated neither irreconcilable defenses nor that the jury would unjustifiably convict defendants solely from such conflict; thus, we cannot conclude that the district judge abused his discretion in denying the pretrial severance motions. *Id.; Becker, supra; Haldeman, supra.*

Despite having properly assessed defendants' inadequate pretrial showings, the district court had a continuing duty at all stages of the trial to grant severance if the requisite degree of prejudice appeared. *Schaffer v. United States,* 362 U.S. 511, 516, 80 S.Ct. 945, 948, 4 L.Ed. 921 (1960); *United States v. Harris,* 761 F.2d 394, 400 (7th Cir.1985); *United States v. Dinneen,* 463 F.2d 1036, 1042 (10th Cir.1972). *See also United States v. Perry,* 731 F.2d 985, 992 (D.C.Cir.1984); *United States v. Engleman,* 648 F.2d 473, 480 n. 5 (8th Cir.1981). Defendants contend that such prejudice arose when Spitler's counsel, during opening statement and closing argument, stated that Spitler was a victim of extortion. Claiming that such comments reflected irreconcilable defenses from which the jury unjustifiably convicted them, defendants argue the district court erred in failing to grant their motions for mistrial and severance. Contrary to their contentions, however, defendants presented at trial largely consistent defenses that the payments to Carpenter were bona fide compensation. "Basically the defenses, weak as they were, paralleled each other, apart from some occasional friction or flare-up which, when considered in the context of the entire trial, were inconsequential." *United States v. Centracchio,* 774 F.2d 856, 861 (7th Cir.1985). The "remarks made here and there by co-defendants' counsel" did not warrant severance, *United States v. DeSimone,* 660 F.2d 532, 541 (5th Cir.), *reh'g denied,* 666 F.2d 592 (1981), *cert. denied,* 455 U.S. 1027, 456 U.S. 928, 102 S.Ct. 1732, 102 S.Ct. 1976, 72 L.Ed.2d 149, 72 L.Ed.2d 444 (1982), because the conflict raised by counsel's argument did not "create[ ] a serious danger that the jury would seize upon it alone as the dispositive indicia of guilt." *United States v. Leonard,* 494 F.2d 955, 967 (D.C.Cir.1974). *Accord Wright,* 783 F.2d at 1096; *United States v. Boyd,* 610 F.2d 521, 525–26 (8th Cir.1979),

---

**2.** Furthermore, as discussed *infra,* the independent evidence of Carpenter's guilt was so strong that any conflict in defenses cannot be said to have resulted in his conviction. *See United States v. Ferguson,* 778 F.2d 1017, 1020 (4th Cir.1985). *See also United States v. Leonard,* 494 F.2d 955, 966–67 (D.C.Cir.1947).

cert. denied, 444 U.S. 1089, 100 S.Ct. 1052, 62 L.Ed.2d 777 (1980); United States v. Davis, 623 F.2d 188, 194–95 (1st Cir.1980). See also Becker, 585 F.2d at 707. For these reasons, we conclude that "the absence of a serious conflict at trial between [the defendants]," Sellers, 658 F.2d at 232, indicates that the district court committed no abuse of discretion in denying defendants' requests for a mistrial and severance.

■ Implicitly arguing they were denied a fair trial because the potential for undue prejudice from irreconcilable defenses "forced both defendants into foregoing the right to take the stand," defendants contend that "[e]ach attorney made the judgment that his client's interests ... required that he not present a defense rather than take an action which would ensure his client's conviction as a result of mutual fingerpointing." Defendants' job, however, was to make substantial proffers to the district judge prior to trial so that the judge could make a meaningful assessment of potential prejudice, if any, from the purported irreconcilable defenses. Defendants' failure to make such a strong showing in the district court, absent any significant indication on appeal that the requisite degree of prejudice in fact occurred at trial, precludes us from concluding the defendants suffered an unfair trial from their decision to present no evidence. See United States v. Potamitis, 739 F.2d 784, 790 (2d Cir.1984), aff'g, 564 F.Supp. 1484, 1486–87 (S.D.N.Y.1983), cert. denied, 469 U.S. 918, 934, 105 S.Ct. 297, 332, 83 L.Ed.2d 232, 269 (1984); United States v. DeLuna, 763 F.2d 897, 921 (8th Cir.), cert. denied, — U.S. —, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985); United States v. Davis, 747 F.2d 440, 442–43 (8th Cir.1984); United States

v. Martinez, 466 F.2d 679, 686–87 (5th Cir. 1972), cert. denied, 414 U.S. 1065, 94 S.Ct. 571, 38 L.Ed.2d 469 (1973).

For all the foregoing reasons, the district court did not abuse its discretion by declining to grant defendants' motions for severance and mistrial.

### Carpenter's Extortion Conviction

■ Carpenter argues that under the interpretation of the Hobbs Act, 18 U.S.C. § 1951,[3] as expressed in United States v. O'Grady, 742 F.2d 682 (2d Cir.1984) (en banc), the government was required to prove that he had exhibited threatening conduct which induced the payment of benefits and that the government failed to present sufficient evidence of such active inducement. Defendant is wholly misguided. As the decisions of this Court make crystal clear, a public official may be convicted of extortion violative of section 1951 not only for obtaining property through coercive demands or other fear-inducing conduct, but alternatively under "color of official right" through mere "retention of things of value paid to him by private persons for performance of his official duty." United States v. Paschall, 772 F.2d 68, 74 (4th Cir.1985), cert. denied, — U.S. —, 106 S.Ct. 1635, 90 L.Ed.2d 181 (1986). See also United States v. Price, 507 F.2d 1349, 1350 (4th Cir.1974); United States v. Billups, 692 F.2d 320, 330–31 (4th Cir.1982), cert. denied, 464 U.S. 820, 104 S.Ct. 84, 78 L.Ed.2d 93 (1983). In other words,

[i]t is enough that the benefactor transfers something of significant value to the public official with the expectation that the public official will extend to him some benefit or refrain from some harmful action, and that the public official

---

**3.** The Hobbs Act provides, in part:

(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

(b) As used in this section—

....

(2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

18 U.S.C. § 1951.

accepts the thing of significant value knowing that it is being transferred to him because of his office.

*Paschall*, 772 F.2d at 71–72. Indeed, "extortion defined as the wrongful obtaining of property under color of official right need not include the element of force or duress, and could include such activity as is commonly considered to be bribery." *United States v. Harding*, 563 F.2d 299 (6th Cir.1977), *cert. denied*, 434 U.S. 1062, 98 S.Ct. 1235, 55 L.Ed.2d 762 (1978). *See also Billups, supra.*

■ When viewed in the light most favorable to the government, the record contains substantial evidence, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), indeed overwhelming evidence, that Carpenter not only retained the benefits that TEI had provided to him, but also coercively demanded the items. Accordingly, the evidence of Carpenter's extortion in violation of the Hobbs Act is not insufficient, and the district court properly denied Carpenter's motion for judgment of acquittal on the extortion counts. *Id.; Paschall, supra; Price, supra.*

*Aiding And Abetting Extortion And Conspiracy To Commit Extortion*

Spitler, relying on *United States v. Nelson*, 486 F.Supp. 464 (W.D.Mich.1980), contends that as a victim of Carpenter's extortion he could not, as a matter of law, be convicted as an aider and abettor or a conspirator to the extortion merely by virtue of his acquiescence, but instead could properly be convicted only if he actively initiated, procured or induced the extortion. As there is insufficient evidence of such active initiation, procurement, or inducement, claims Spitler, the district court erred in denying his motion for judgment of acquittal. The government responds by arguing that because the items furnished to Carpenter had been purchased with TEI funds, TEI, not Spitler, was the "victim" and "payor" of the extorted property and thus, Spitler properly could be held a conspirator and an aider and abettor. We initially question the soundness of the

government's position because under its theory, a corporate officer who merely accedes to a public official's implicit or explicit demands to the corporation by authorizing an expenditure of corporate funds would be subject to prosecution under the Hobbs Act for aiding and abetting the extortion and for conspiracy to commit the extortion. As discussed below, such a result may be said to be beyond the legislative intent of the Hobbs Act. We affirm Spitler's conviction of aiding and abetting extortion and conspiracy to commit extortion because Spitler cannot be deemed a mere extortion victim whose conduct, under the defendants' argument, Congress chose not to criminalize under the statutes proscribing aiding and abetting and conspiracy.

Our analysis of the propriety of Spitler's position begins with *Gebardi v. United States*, 287 U.S. 112, 53 S.Ct. 35, 77 L.Ed. 206 (1932), wherein the Supreme Court overturned a woman's conviction for having conspired with a man to transport herself across state lines to engage in sexual relations violative of the Mann Act,[4] which penalized anyone who transports or "aids and assists" the transportation of a woman in interstate commerce for the purpose of prostitution, debauchery, or other immoral purpose. As the statute specified punishment only for the person who so transported the woman, the Supreme Court held that the statute manifested a legislative purpose to protect the woman so that the woman's consent to be transported could not be a basis on which to hold her criminally responsible either as an aider and abettor or as a conspirator. Held the Court,

we perceive in the failure of the Mann Act to condemn the woman's participation in those transportations which are effected with her mere consent, evidence of an affirmative legislative policy to leave her acquiescence unpunished. We think it a necessary implication of that policy that when the Mann Act and

4. Now 18 U.S.C. § 2421 (as amended).

conspiracy statute came to be construed together, as they necessarily would be, the same participation which the former contemplates as an inseparable incident of all cases in which the woman is a voluntary agent at all, but does not punish, was not automatically to be made punishable under the latter.

*Id.* at 123, 53 S.Ct. at 38. In other words, since the Court could not "infer that the mere acquiescence of the woman transported was intended to be condemned by the general language punishing those who aid and assist the transporter," *id.* at 119, 53 S.Ct. at 36, it could not conclude that such consent of the victim was intended to be punished under the conspiracy prohibition. *Id.* at 117, 119–23, 53 S.Ct. at 36, 36–38.

In accordance with the *Gebardi* principle of statutory construction, therefore,

[i]t seems clear that the victim of a crime should not be held as an accomplice in [or a conspirator to] its perpetration, even though his conduct in a sense may have assisted in the commission of the crime and the elements of complicity [or conspiracy] may technically exist. The businessman who yields to the extortion of a racketeer, the parent who pays ransom to the kidnapper, may be unwise or may even be thought immoral; to view them as involved in the commission of the crime confounds the policy embodied in the prohibition; it is laid down, wholly or in part, for their protection.

Model Penal Code § 2.06, Comment (1985). *See also* W. Lafave & A. Scott, *Criminal Law* 521 (1972). Consistent with this notion, the Hobbs Act, like the Mann Act construed in *Gebardi,* may be interpreted as not intended to punish the "victim" of

the crime. The legislative history of the Hobbs Act, moreover, indicates that Congress intended to punish "those persons who have been impeding interstate commerce and levying tribute from free-born Americans engaged in interstate commerce." H.Rep. No. 238, 79th Cong. 2d Sess. 1946), *reprinted in* 1946 U.S.Code Cong.Serv. 1360, 1370. Such legislative history and the statute's prescription of punishment solely for the extortioner indicates that Congress may not have intended to criminalize the acquiescence of extortion victims. *Gebardi, supra. See also Nelson,* 486 F.Supp. at 490.

██ When an individual protected by such legislation exhibits conduct more active than mere acquiescence, however, he or she may depart the realm of a victim and may unquestionably be subject to conviction for aiding and abetting and conspiracy. We derive such conclusion again from *Gebardi,* wherein the Court, relying on *United States v. Holte,* 236 U.S. 140, 35 S.Ct. 271, 59 L.Ed. 504 (1915), observed that where the woman's conduct is "more active than mere agreement on her part to the transportation," 287 U.S. at 119, 53 S.Ct. 36, and where she is "the active or moving spirit in conceiving or carrying out the transportation" she is not a victim, but an accomplice. *Id.* at 117–18, 53 S.Ct. at 36. Quoting *Holte,* 236 U.S. at 145, 35 S.Ct. at 272, moreover, the Court similarly saw "little reason for not treating the preliminary agreement as a conspiracy that the law can reach, if we abandon the illusion that the woman always is the victim." [5] *Gebardi,* 287 U.S. at 117, 53 S.Ct. at 36.

---

5. The Court recognized the "Wharton Rule," but as in *Holte,* 236 U.S. at 145, 35 S.Ct. at 272, held the rule inapplicable to a case under the Mann Act. *Gebardi,* 287 U.S. at 122, 53 S.Ct. at 37–38. The Court noted that the Wharton Rule provides that "where it is impossible under any circumstances to commit the substantive offense without cooperative action, the preliminary agreement between the same parties to commit the offense is not an indictable conspiracy either at common law … or under the federal statute." *Id.* (Citations omitted.) *See also Pinkerton v. United States,* 328 U.S. 640, 643, 66 S.Ct. 1180,

1182, 90 L.Ed. 1489 (1946). Consistent with our holding in *United States v. Bobo,* 477 F.2d 974, 987–88 (4th Cir.1973), *cert. denied,* 421 U.S. 909, 95 S.Ct. 1557, 43 L.Ed.2d 774 (1975), however, the Court in *Iannelli v. United States,* 420 U.S. 770, 782, 95 S.Ct. 1284, 1292, 43 L.Ed.2d 616 (1975), held that the Wharton Rule "has current vitality only as a judicial presumption to be applied in the absence of legislative intent to the contrary." *See also id.* at 776, 95 S.Ct. at 1289. Such presumption nevertheless is of no aid to defendants Carpenter and Spitler in their quest to set aside their conspiracy convictions, for we

The degree of activity necessary for a purported victim of extortion to be a "perpetrator of it," *United States v. Zeuli,* 725 F.2d 813, 817 (1st Cir.1984), so that in reality he is not a victim but a "victimizer," *In re Financial Partners Class Action Litigation,* 597 F.Supp. 686, 687 (N.D.Ill. 1984), subject to aiding and abetting and conspiracy charges is of no little significance. Our decision in *United States v. Johnson,* 337 F.2d 180 (4th Cir.1964), *aff'd,* 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966), however, provides some guidance. In *Johnson,* 337 F.2d at 196, we upheld the convictions of payors for having aided and abetted a congressman's receipt of compensation proscribed by 18 U.S.C. § 281. The payors had argued, consistent with the *Gebardi* notion of statutory construction, that the statute manifested a legislative intention to leave them unpunished because it specifically made criminal only the conduct

of the recipient. *Id.; Johnson,* 215 F.Supp. 300, 316 n. 17 (D.Md.1963). Without ruling "whether mere payment would sustain a charge of aiding and abetting," 337 F.2d at 196 n. 24, we held that since the indictment had charged the defendants "with a far more active role—'aiding, abetting, counselling, commanding, inducing and procuring[,]' ... [such] conduct in *addition* to the mere payment of money" was sufficient to sustain the aiding and abetting charge and conviction. 337 F.2d at 196 (original emphasis). *See also United States v. Kenner,* 354 F.2d 780, 785 (2d Cir.1965), *cert. denied,* 383 U.S. 958, 86 S.Ct. 1223, 16 L.Ed.2d 301 (1966). In a similar vein, in *Nelson,* 486 F.Supp. 464 (W.D.Mich.1980), where a lobbyist had bribed a legislator, the court held that an indictment against the payor for aiding and abetting extortion "under color of official right in violation of the Hobbs Act," *id.* at 486, 492, may prop-

deem the Wharton Rule inapplicable because (1) the substantive offense of extortion does not require either an agreement to commit the offense or similar "concerted criminal activity," *Iannelli,* 420 U.S. at 785, 95 S.Ct. at 1293, and (2) the "third-party exception" to the Wharton Rule applies.

The Court in *Holte* and *Gebardi,* in noting that the woman could have been held a conspirator had she not been a victim, "adopted a narrow construction of the [Wharton] Rule that focuses on the statutory requirements of the substantive offense," *Iannelli,* 420 U.S. at 780, 95 S.Ct. at 1291, and found the Wharton Rule inapposite because "criminal transportation under the Mann Act may be effected without the woman's [true] consent, as in cases of intimidation or force," *Gebardi,* 287 U.S. at 122, 53 S.Ct. at 38 (citing *Holte,* 236 U.S. at 145, 35 S.Ct. at 272), and consequently, the substantive offense, unlike the conspiracy prohibition, did not *"require* concerted criminal activity." *Iannelli,* 420 U.S. at 785, 95 S.Ct. at 1293 (original emphasis). We similarly conclude the Wharton Rule is inapposite to the instant case because extortion under the Hobbs Act may be effected through force or intimidation which cannot constitute a criminal agreement or similar "concerted criminal activity," *id.,* necessary to both the conspiracy and substantive offenses. As a result, because we hold in the text, *infra,* that defendant Spitler is not a victim, we conclude the overwhelming evidence of Spitler's agreements with Carpenter to effectuate extortion properly provided a basis for defendants' conspiracy convictions. *Gebardi,* 287 U.S. at 117, 122, 53 S.Ct. at 36, 37–38.

Furthermore, Spitler, as a non-victim, and Carpenter properly may have been convicted for having conspired with others to effectuate the extortion. The evidence adduced at trial was sufficient to trigger the "third-party exception" which renders the Wharton Rule inapplicable when "the conspiracy involves more persons than are required for commission of the substantive offense." *Iannelli,* 470 U.S. at 782 n. 15, 775, 95 S.Ct. at 1292 n. 15, 1289. *See also Gebardi,* 287 U.S. at 122 n. 6, 53 S.Ct. at 38 n. 6. The evidence indicated that Carpenter had agreed with another public official, Dick Wardenfelt, to acquire for Wardenfelt the untraceable .357 Magnum. *See* Trial Transcript 1337–39, 290–93, 881–90. Similarly, the evidence indicated that Spitler had agreed with other TEI employees, some of whom were old friends of Carpenter, to provide various items to Carpenter. We hold that the evidence is substantial and supports defendants' convictions on the conspiracy count, which alleged that Carpenter and Spitler had conspired with each other "and with other persons known and unknown to the Grand Jury, to ... affect commerce by extortion" and that Carpenter and Spitler "and others" had so agreed. *Iannelli, supra. See also United States v. Allen,* 613 F.2d 1248, 1253 (3d Cir.1980); *Government of Virgin Islands v. Hoheb,* 777 F.2d 138, 140–41 (3d Cir.1985). The district court, therefore, properly denied defendants' motions for judgments of acquittal on the conspiracy count.

erly lie where the payor exhibited "more than the mere payment of money" and "actively solicited and procured" or "actively induced and solicited" the recipient's purported extortion. *Id.* at 491. The court added that as a "briber" and "initiator of an extortion," the lobbyist "is in no position to contend that he is an innocent victim of the [legislator's] alleged extortion." *Id.* at 490. To a similar effect, see *Zeuli,* 725 F.2d at 817; *United States v. Villarreal,* 764 F.2d 1048, 1052 (5th Cir.), *reh'g denied,* 769 F.2d 1044, *cert. denied,* — U.S. —, 106 S.Ct. 272, 88 L.Ed.2d 233 (1985); and *Financial Partners,* 597 F.Supp. at 687.

■ In resolving the instant case, we need not paint with a broad brush and declare a bright line at which a payor's conduct constitutes sufficient activity beyond the mere acquiescence of a victim so as to subject him to prosecution as an aider and abettor or a conspirator.[6] Rather, our foregoing discussion of case law leads us to the undeniable conclusion that under the facts of this case, Spitler cannot properly be deemed a mere victim of Carpenter's extortionate demands. During the year prior to entering the mail fraud scheme, Carpenter demanded and received from TEI items of value. With knowledge of such early "shakedowns" and of Carpenter's "reputation for doing that in business,"[7] Spitler obtained Carpenter's agreement to approve the fraudulent invoices. In view of Spitler's knowledge of Carpenter's manner of conducting business, it is inconceivable for Spitler to have entered the mail fraud scheme without expecting Carpenter subsequently to demand additional items in return for Carpenter's consistent approval of TEI's overbillings. By entering the mail fraud scheme, therefore, Spitler created a symbiotic relationship with Carpenter through which Spitler and TEI, in exchange for subsequent payments to Carpenter, would receive substantial financial benefits from Carpenter's approval of TEI's false invoices.[8] Carpenter's future extortionate demands consequently were an inextricable part and premise of the mail fraud scheme whereby the payment of items demanded by Carpenter provided the necessary lubrication to effectuate the fraudulent operation.[9] Spitler's involvement in the mail fraud scheme thus constituted a "far more active role ... in *addition* to the mere payment of money," *Johnson,* 337 F.2d at 196 (original emphasis), and induced, procured, caused, and aided Carpenter's subsequent extortion.[10] *See id.; Nelson,* 486 F.Supp. at 491. For these reasons, we reject Spitler's claim that he was a mere extortion victim whose acquiescence Congress intended not to criminalize under the aiding and abetting and conspiracy statutes. *See Gebardi, supra.* The true victims are the governments and taxpayers of Maryland and the United States whose tax dollars were unjustly depleted by defendants' fraudulent billing scheme of which Spitler's payoffs to Carpenter constituted an integral part. We conclude that Spitler properly was subject

6. To declare a rule of general applicability might criminalize under the Hobbs Act conduct which, for example, may constitute "active solicitation and procurement," *see Nelson,* 486 F.Supp. at 491, but may nevertheless be conduct of a victim succumbing to a climate of unstated prerequisites to doing business with particular public officials or departments.

7. Joint Appendix 88.

8. Spitler was receiving a commission of three percent of TEI's Maryland billings when he entered the mail fraud scheme. Furthermore, Spitler apparently recognized that it was in his interest to authorize the payments to Carpenter, as evidence indicated, *inter alia,* that Spitler had said that he "owned" Carpenter and had Carpenter "in my pocket."

9. Indeed, the indictment charged that "[i]t was further part of the scheme and artifice to defraud that Spitler, on behalf of TEI, would and did provide Carpenter with items of value, including weapons and jewelry."

10. The indictment charged that Spitler and Carpenter "did willfully, knowingly, and unlawfully obstruct, delay, affect commerce and did cause, aid, abet, counsel, command, induce and procure said obstruction, delay and effect [sic] with respect to such commerce by extortion...."

to prosecution under 18 U.S.C. §§ 2 and 1951 for aiding and abetting extortion and conspiracy[11] to commit extortion and that the evidence of Spitler's criminal conduct was substantial. *See Glasser, supra.* Accordingly, the district court committed no error in denying Spitler's motion for judgment of acquittal on the aiding and abetting and conspiracy charges.

Spitler also alleges error in the district court's failure to give a jury instruction concerning the aiding and abetting extortion counts. In the proposed instruction, Spitler asked the district court to charge the jurors that if they found Spitler to have acted as an agent of TEI when he furnished items to Carpenter, then they must find that Spitler was a victim of extortion, insulated from accomplice liability.[12] In light of our foregoing discussion of the propriety of Spitler's conviction for aiding and abetting, we conclude the district court committed no error by declining to recite the requested instruction because under the facts of this case, Spitler, as a non-victim, was amenable to conviction as an aider and abettor of extortion despite having acted as the agent of TEI. *See Zeuli,* 725 F.2d at 817 (defendant was not entitled to a similar instruction where evidence failed to support his contention that he "was the victim of the extortion rather than a perpetrator of it").

*Mail Fraud*

■ Defendants argue that the government presented evidence insufficient to support their convictions on the mail fraud counts. However, "[t]o obtain a conviction under 18 U.S.C. § 1341, the prosecution must prove two essential elements—(1) the existence of a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme." *United States*

*v. Murr,* 681 F.2d 246, 248 (4th Cir.) (citing *Pereira v. United States,* 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954)), *cert. denied,* 459 U.S. 973, 103 S.Ct. 307, 74 L.Ed.2d 286 (1982). *See also United States v. Brewer,* 528 F.2d 492, 494–95 (4th Cir.1975); *United States v. Mandel,* 591 F.2d 1347, 1360–62 (4th Cir.), *on rehearing,* 602 F.2d 653 (en banc), *reh'g denied,* 609 F.2d 1076 (1979), *cert. denied,* 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980). We hold that the evidence, viewed in the light most favorable to the government, constituted substantial evidence of the defendants' guilt of mail fraud. *Glasser, supra.* We further hold that the government presented substantial evidence that defendants had aided and abetted mail fraud within the meaning of 18 U.S.C. §§ 2 and 1341. *Id. See Nye & Nissen v. United States,* 336 U.S. 613, 619–20, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949). Accordingly, the district court committed no error in declining to grant the defendants' motions for judgments of acquittal on the mail fraud counts.

*Conclusion*

For the reasons enumerated herein, we affirm the judgments of the district court.

AFFIRMED.

---

11. See footnote 5 and the accompanying text.

12. Specifically, Spitler sought the following instruction:

   If you find that those things of value allegedly extorted from TEI were in fact extorted from Spitler as the agent, officer and employee of TEI, then you must find that Spitler as the victim of an extortion, did not act knowingly and willingly and therefore lacks the specific intent required for conviction either as principal or as an aider and abettor in violation of the Hobbs Act.