919 F.2d 734
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Creadell HUBBARD, Defendant-Appellant.
 No. 89-5146.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 2, 1990.
Decided Dec. 10, 1990.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, District Judge. (CR-88-40)
 Michael Wood Clark, McNamara, Pipkin, Knott, Carruth & Crawley, Raleigh, N.C. (Argued), for appellant; Joseph T. Knott, III, McNamara, Pipkin, Knott, Carruth & Crawley, Raleigh, N.C., on brief.
 Richard A. Friedman, United States Department of Justice, Washington, D.C. (Argued), for appellee; Margaret P. Currin, United States Attorney, R. Daniel Boyce, Assistant United States Attorney, Raleigh, N.C., on brief.
 E.D.N.C.
 AFFIRMED.
 Before WIDENER, Circuit Judge, BUTZNER, Senior Circuit Judge, and SAMUEL GRAYSON WILSON, United States District Judge for the Western District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Creadell Hubbard appeals his convictions for bank robbery and assault with a dangerous weapon, carrying a firearm during a crime of violence, possession of stolen money, and conspiracy to possess stolen money. Hubbard claims that the district court erred by refusing to grant him a separate trial from his codefendants and by submitting the case to the jury with evidence insufficient to support a guilty verdict. Hubbard also appeals his sentence, claiming that the district court erred in applying the career offender provisions because a prior third degree burglary conviction was not a crime of violence as required by the guidelines. We find no merit in Hubbard's contentions and therefore affirm his convictions and sentence.
 
 
 2
 * The jury found that Hubbard robbed the State Employees Credit Union and that Alice Williams drove the getaway car. An eyewitness testified that she saw a woman matching Williams's description waiting in the car that the ski-masked robber jumped into after hurrying from the bank. Police quickly traced the car to Williams, and she stated to Detective Sergeant Baker that although she had been driving the car, she did not know Hubbard was going to rob the bank. In relating Williams's statement to the jury, Sergeant Baker made two statements to which defense counsel immediately objected:
 
 
 3
 [Williams] stated ... [that] upon leaving the grill she was instructed to go to the [location of the bank].
 
 
 4
 .............................................................
 
 
 5
 ...................
 
 
 6
 * * *
 
 
 7
 Based on the information that we received from Miss Williams, [several detectives] went to the residence of Creadell Hubbard located on Cascade Court.
 
 
 8
 The district court sustained both objections and instructed the jury to disregard the statements. Additionally, after a bench conference following the second statement, the district court specifically said to the jury:
 
 
 9
 I instructed you to disregard the last answer that [Sergeant Baker] made with respect to what he did after finishing his interview and his questioning of Miss Williams and you're to follow that instruction.
 
 
 10
 Prior to trial Hubbard moved to sever his trial from Williams's, arguing that their defenses were irreconcilable. Williams's defense was that she did not know the bank robbery was going to take place and that the money witnesses saw her with later was not money from the bank but rather gambling proceeds. Hubbard's defense was that the government did not prove he was the ski-masked robber. Williams did not testify or put on other evidence, and her closing argument did not claim Hubbard was the robber.
 
 II
 
 11
 Hubbard's argument for severance emphasizes Sergeant Baker's objectionable testimony about Williams's statements. Hubbard contends that this testimony constitutes admission of a codefendant's confession that also implicates the defendant. In Bruton v. United States, 391 U.S. 123 (1968), the Court held that it was ineffective to instruct the jury to use such statements only against the codefendant who made them. Hence admitting such a confession violates the Confrontation Clause, U.S. Const. amend VI. Subsequently, the Court held that limiting instructions are sufficient to cure impermissible inferences of the defendant's involvement in the crime if the codefendant's confession is redacted to eliminate any mention of the defendant's name and existence. Richardson v. Marsh, 481 U.S. 200, 211, 211 n. 5 (1987).
 
 
 12
 Sergeant Baker's testimony that Williams said she "was told" to go to the location of the robbery clearly reveals the existence of another person. If this was error, however, it was harmless error because the uncontradicted eyewitness testimony established that the robbery involved two people. See Harrington v. California, 395 U.S. 250 (1969).
 
 
 13
 Hubbard places more emphasis on Sergeant Baker's testimony about going to Hubbard's house after talking with Williams. Initially, it is not certain that Burton applies to this testimony because it discloses only Sergeant Baker's reaction to Williams's statement. Nevertheless, the link between Williams's statement and Hubbard's guilt is so attenuated that the district court was correct in presuming that the jury would follow a limiting instruction. See Richardson, 481 U.S. at 208.
 
 
 14
 Hubbard complains that unlike the procedure followed in Richardson, the district court did not instruct the jury to consider Sergeant Baker's testimony about the statements in determining only Williams's guilt. Instead the district court instructed the jury to disregard the statements entirely. Hubbard did not specifically request the narrower limiting instruction, and the district court had no reason to issue it sua sponte because it gave a broader instruction. Thus Sergeant Baker's testimony about Williams's statements either did not violate Bruton and Richardson, or, at most, was harmless error.
 
 
 15
 In the absence of a Bruton violation, the claim that the district court erred in not granting Hubbard a separate trial is unavailing. A district court does not abuse its discretion in denying a motion for severance unless the conflicting defenses are "so prejudicial that the differences are irreconcilable, 'and that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty.' " United States v. Spitler, 800 F.2d 1267, 1272 (4th Cir.1986). Williams's only defense was a lack of prior knowledge that anyone was going to rob the bank. Williams's closing argument emphasized this defense. At trial, she never named Hubbard as the robber. The district court did not abuse its discretion in denying Hubbard's motion to sever.
 
 III
 
 16
 In his brief, Hubbard also challenges the sufficiency of the evidence to convict him. We review the evidence in the light most favorable to the government to determine if any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Glasser v. United States, 315 U.S. 60 (1942). After a review of the record, we hold the district court did not err in sending this case to the jury.
 
 IV
 
 17
 After finding that Hubbard was a career offender, the district court sentenced him to imprisonment for 327 months. The court ruled that he met the requirements of U.S.S.G. Sec. 4B1.1, including having two prior felony convictions of crimes of violence. Section 4B1.2 defined a crime of violence by incorporating the definition found in 18 U.S.C. Sec. 16(b): "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Parenthetically we note that Sec. 4B1.2 has been amended. See U.S.S.G.App. C p 268, pp. 137-39 (1989). The effective date, however, makes the amendment inapplicable.
 
 
 18
 One of the predicate felonies, second degree murder, was a crime of violence. The second felony alleged by the government is Hubbard's conviction in Kentucky for third degree burglary. He contends that his conviction of third degree burglary is not a crime of violence because he was convicted of burglary of a building.
 
 Kentucky law provides:
 
 19
 A person is guilty of a burglary in the third degree when, with the intent to commit a crime, he knowingly enters or remains unlawfully in a building.
 
 
 20
 Ky.Rev.Stat.Ann. Sec. 511.040. For the purpose of this statute, Kentucky's definition of a building is:
 
 
 21
 "Building", in addition to its ordinary meaning, means any structure, vehicle, watercraft or aircraft:
 
 
 22
 (a) Where any person lives; or
 
 
 23
 (b) Where people assemble for purposes of business, government, education, religion, entertainment or public transportation.
 
 
 24
 Ky.Rev.Stat.Ann. Sec. 511.010.
 
 
 25
 To determine whether third degree burglary is a crime of violence, we turn to U.S.S.G. Sec. 4B1.2 comment. (n. 1), which was in effect at all pertinent times. See U.S.S.G.App. C p 268, p. 138 (1989). The commentary defined a crime of violence to include burglary of a dwelling. The commentary also directed the court to ascertain coverage by examining the defendant's conduct. The undisputed facts recited in the presentence report disclosed that Hubbard participated in the burglary of a building that was a dwelling.
 
 
 26
 Hubbard relies on United States v. Headspeth, 852 F.2d 753 (4th Cir.1988), which dealt with the meaning of burglary in 18 U.S.C. Sec. 924(e), a comparable enhancement statute. Hubbard's reliance on Headspeth is foreclosed by Taylor v. United States, 110 S.Ct. 2143 (1990). In that case the Court, contrary to Headspeth, rejected the common law and state law definitions of burglary. The Court said:
 
 
 27
 We conclude that a person has been convicted of burglary for purposes of a Sec. 924(e) enhancement if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime.
 
 
 28
 110 S.Ct. at 2158.
 
 
 29
 The Court also explained that the statutory definition of the offense, rather than the offender's conduct, should determine enhancement. This general rule, however, is subject to an exception when the burglary statute includes automobiles as well as buildings. Then the trial court can look to the indictment or jury instructions to determine if the defendant entered a building. Taylor, 110 S.Ct. at 2158-60.
 
 
 30
 Here the exception to Taylor's general rule applies because the Kentucky statute punishes the burglary of dwellings and vehicles. Hubbard's presentence report recites that he was convicted in Kentucky for participating in the burglary of a dwelling. Hubbard did not object to this aspect of the report, and at the sentencing hearing his counsel told the court that the building was in fact a dwelling. The presentence report and Hubbard's concession satisfy the proof the Court suggested in Taylor when a state statute includes both dwellings and vehicles in its definition of burglary.
 
 
 31
 Tested by either the sentencing guidelines and commentary or the subsequent explanation in Taylor about the proper interpretation of a comparable term in an enhancement statute, the district court's finding that Hubbard is a career offender is correct.
 
 
 32
 AFFIRMED.