993 F.2d 1540
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of Anerica, Plaintiff-Appellee,
v.
Andrew FLETCHER, a/k/a Boonie Fletcher, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Thomas Floyd Littlejohn, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Marvin Brewer, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Donna Lamyrtle Collington, Defendant-Appellant.
 Nos. 91-5193, 91-5194, 91-5196, 91-5197.
 United States Court of Appeals,
Fourth Circuit.
 Argued: February 4, 1993
Decided: May 11, 1993
 
 Appeals from the United States District Court for the Western District of North Carolina, at Asheville. Richard L. Voorhees, Chief District Judge. (CR-90-231-A)
 Sean Patrick Devereux, Whalen, Hay, Pitts, Hugenschmidt, Master, Devereux & Belser, P.A., Asheville, North Carolina, for Appellant Littlejohn.
 Stephen Paul Lindsay, Lindsay & True, Asheville, North Carolina, for Appellant Littlejohn.
 Donald Nash Patten, Waynesville, North Carolina, for Appellant Collington.
 John Byrd, Asheville, North Carolina, for Appellant Brewer.
 Kenneth D. Bell, Assistant United States Attorney, Charlotte, North Carolina, for Appellee.
 Thomas J. Ashcraft, United States Attorney, Charlotte, North Carolina; Max O. Cogburn, Jr., Assistant United States Attorney, Asheville, North Carolina, for Appellee.
 W.D.N.C.
 AFFIRMED.
 Before NIEMEYER and HAMILTON, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 PER CURIAM:
 
 OPINION
 
 1
 Andrew Fletcher, Donna Lamyrtle Collington, Marvin Brewer, and Thomas Floyd Littlejohn were charged in a 51-count indictment with conspiracy to possess with the intent to distribute and to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846.[1] Each defendant was also charged with multiple counts of possession with intent to distribute cocaine and distribution of cocaine in violation of 21 U.S.C. § 841(a)(1), with aiding and abetting others in the distribution and possession of cocaine in violation of 18 U.S.C.s 2, and with attempting to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Finally, Andrew Fletcher was charged with engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848.
 
 
 2
 Following a week and a half trial, the jury returned guilty verdicts on September 13, 1991, against all four defendants. Andrew Fletcher was found guilty on the conspiracy count, 21 counts of possession with intent to distribute cocaine, 22 counts of distribution of cocaine, and one count of engaging in a continuing criminal enterprise, and he was sentenced to 360 months imprisonment. Littlejohn was also sentenced to 360 months imprisonment for his convictions on the conspiracy charge, 14 counts of possession with intent to distribute cocaine, and 13 counts of distribution of cocaine. Collington was found guilty on the conspiracy charge, 16 counts of possession with intent to distribute cocaine, and 15 counts of distribution of cocaine, and was sentenced to 151 months imprisonment. Brewer was convicted on the conspiracy charge, 14 counts of possession with intent to distribute cocaine, and 13 counts of distribution of cocaine, and was sentenced to 188 months imprisonment.
 
 
 3
 On appeal the appellants challenge various aspects of their trial and convictions. For the reasons given, we modify the judgment of the district court to vacate the conspiracy conviction of Andrew Fletcher, and, as modified, we affirm.
 
 
 4
 * The appellants first contend that the trial court erred by not granting their motion for continuance to allow them additional time to prepare for trial in light of their late discovery of Brady information, three days before trial.
 
 
 5
 In response to Andrew Fletcher's timely filed discovery and Brady motions, the district court entered an order dated May 3, 1991, directing the government to disclose to defense counsel all Brady material "in the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence should become known, to the attorney for the government." During the week prior to trial, the government came into possession of a letter written by Littlejohn to Fletcher while Littlejohn was in prison, and also became aware of a statement made by Brewer to law enforcement officers following his arrest in April 1990, both of which fell within the court's order. When the government informed opposing counsel that it intended to offer these statements as evidence at trial, the appellants filed a motion for continuance which the district court denied.
 
 
 6
 The granting or denial of a continuance is a matter that falls within the discretion of the trial judge. See United States v. LaRouche, 896 F.2d 815, 823 (4th Cir.), cert. denied, 496 U.S. 927 (1990). A court abuses its discretion in refusing to grant a continuance, thereby violating the defendant's Sixth Amendment right to the assistance of counsel, only if it exhibits "an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay.' " Morris v. Slappy, 461 U.S. 1, 11-12 (1983) (quoting Ungar v. Sarafite, 376 U.S. 575, 589 (1964)). The denial of a motion for continuance must be shown to have specifically prejudiced the defendant's case for it to constitute reversible error; that is, "in the absence of circumstances giving rise to a presumption that the defendant's case was prejudiced, the defendant must point to specific errors made by defense counsel that undermine confidence in the outcome of the trial." Larouche, 896 F.2d at 823 (citation omitted).
 
 
 7
 Here, the appellants have not shown any prejudice or identified any specific errors that occurred at trial that would not have taken place if they had been informed earlier about Littlejohn's letter or Brewer's post-arrest statement. We therefore find that the trial court did not abuse its discretion in denying the motion for continuance.
 
 II
 
 8
 The appellants also contend that because of a disparity of evidence and potentially antagonistic defenses, the district court abused its discretion in denying their pretrial motion for severance.
 
 
 9
 It is well understood that defendants charged in the same conspiracy ordinarily should be tried together. United States v. Brooks, 957 F.2d 1138, 1145 (4th Cir.), cert. denied, 112 S.Ct. 3051 (1992). A party moving for severance must establish that prejudice would result from a joint trial. Fed. R. Crim. P. 14. It is not enough to show that separate trials would provide a better chance of acquittal or that the evidence against one defendant is stronger than that against other defendants. Brooks, 957 F.2d at 1145. Moreover, the mere presence of hostility among defendants or the desire of one to exculpate himself by inculpating another are insufficient grounds to require separate trials. United States v. Spitler, 800 F.2d 1267, 1271 (4th Cir. 1986). Finally, "the decision to deny severance, which is within the sound discretion of the district judge, will not be overturned unless the defendant affirmatively demonstrates a clear abuse of discretion through having been deprived a fair trial and having suffered a miscarriage of justice." Id. at 1271-72.
 
 
 10
 Applying these principles, we find that the district court's denial of the motion for severance did not constitute reversible error. The appellants have offered no affirmative demonstration that they were deprived of a fair trial by the denial of severance. Although the evidence against Collington was, arguably, less strong than that against the other appellants, this fact alone is not enough to require a severance. See United States v. Mandel, 591 F.2d 1347, 1371 (4th Cir. 1979) ("Severance will not be granted when the claim is based on the disparity of evidence adduced against individual defendants without a strong showing of prejudice ...."), vacated on other grounds, 602 F.2d 653 (4th Cir. 1979) (en banc), cert. denied, 445 U.S. 961 (1980). Furthermore, we note that the district court appropriately instructed the jury to consider the evidence against each defendant separately.[2]
 
 III
 
 11
 The appellants contend that the district court erred when it refused to allow a continuance during trial to enable them to recall Linzell Baker for further cross-examination following their discovery of additional information that conflicted with some of Baker's earlier testimony at trial. Baker was the government's chief witness.
 
 
 12
 Prior to trial Baker was arrested as a supplier of cocaine to Fletcher in kilogram amounts. He agreed to cooperate with the government and did so by arranging another transaction with Fletcher during which Fletcher, Collington and Walter Fletcher were arrested. Baker also testified to earlier transactions between him and Fletcher that occurred before Baker's arrest.
 
 
 13
 During trial, after Baker had completed his testimony and was fully cross-examined, the court inquired of defense counsel as to the number of defense witnesses to be called the following day, September 12. Defense counsel replied that only one other witness, Clara Mills, Andrew Fletcher's mother and an Asheville business person, was to be called. On September 12, however, defense counsel discovered a detention order relating to the Florida arrest of Baker, which contained findings of fact by a federal magistrate in the Southern District of Florida. The order allegedly revealed that, contrary to what Baker had testified at trial, he had gambled in the past and lived in a house in Florida worth $300,000. When counsel for Fletcher sought to recall Baker, the government stated it had excused him and he had returned to Florida. Defense counsel cited the earlier arrangement whereby all witnesses would remain available for further testimony, and requested a recess until Baker could be returned as a witness. The trial judge denied that request, but upon suggestion of Fletcher's attorney, the court encouraged the parties to stipulate to the information contained in the detention order. A stipulation was subsequently agreed to, and Fletcher's attorney read it into evidence.[3]
 
 
 14
 The appellants contend that the conflict between Baker's testimony and the findings from the detention order was particularly important in this case because the defense's principal strategy was to portray the association between the co-defendants as one "based upon a shared enthusiasm for gambling rather than an agreement to traffic in cocaine." The appellants further argue that Baker was evasive on the stand about his home in Florida, and that their case was prejudiced by an inability to impeach his credibility with the newly discovered evidence. Because their ability to expose Baker's potential bias as a witness was curtailed by the court's failure to grant a continuance to allow his return for questioning, the appellants contend that their rights under the Sixth Amendment's Confrontation Clause were violated. See Delaware v. Van Arsdall, 475 U.S. 673, 680 (1986) ("[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness.' ") (quoting Davis v. Alaska, 415 U.S. 308, 318 (1974)).
 
 
 15
 After a careful review of the entire record, we are satisfied that the district court's decision not to recall Baker did not affect the outcome of the trial and was a proper exercise of its discretion. The Supreme Court in Van Arsdall recognized that the Confrontation Clause places reasonable limitations on defense counsel's inquiry on crossexamination into the potential bias of a prosecution witness, and that a trial judge has "wide latitude ... to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Id. at 679. Here, counsel for each appellant conducted extensive crossexamination of Baker, with no limitation imposed by the court. Much of the cross-examination concerned Baker's cooperation with the government and any favorable treatment he may have received from the government in exchange for his testimony in this case. Moreover, the information contained in the Florida detention order was stipulated to and entered into evidence in this case. While we recognize that by agreeing to the stipulation defense counsel was seeking to present the information to the jury in whichever form possible and that the stipulation would probably have a less dramatic effect than would crossexamination, we cannot conclude that the court's decision unduly prejudiced the appellants' case.
 
 
 16
 While this appeal was pending, counsel for appellants discovered yet further information to corroborate the matters in the detention order. They filed a motion to remand this appeal for further hearing in the district court. The appellants allege that the new information shows that Baker's Florida attorney was the owner of the Florida residence where Baker was living during this trial, that he accepted from Baker a $90,000 down payment for the home, and that he subsequently transferred ownership of the home as part of the money laundering scheme which involved the transfer of drug proceeds outside the United States. The appellants also contend that the new information reveals that, in consideration for Baker's cooperation, the government intervened on his behalf to prevent forfeiture of the Florida residence.
 
 
 17
 Again, we find that this additional evidence would not have changed the outcome of this trial. As we already observed, Baker was subjected to significant cross-examination on these points by counsel for each appellant, much of which was directed to his cooperation with the government. The jury was well aware of Baker's character and potential biases as a witness, and we cannot say that making them yet more aware by exposure to the additional information would have changed the jurors' minds about the guilt of the appellants. We therefore deny the motion to remand. See United States v. Bagley, 473 U.S. 667, 682 (1985) (holding that the government's failure to disclose Brady impeachment evidence requires reversal of a conviction "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.")
 
 IV
 
 18
 At trial, Fletcher objected to the admission into evidence of an address book, containing the telephone and "beeper" numbers of other alleged conspirators, which was found in a 1989 Pontiac Grand Am which the government seized during a search of the apartment of Bonita Peake, Fletcher's girlfriend. The search warrant for the apartment did not mention the Pontiac, which was owned by Peake and parked outside of her apartment. Fletcher contends that the search and seizure of the Pontiac was illegal and that therefore the evidence should have been excluded.
 
 
 19
 The Pontiac had been used by Fletcher a few days before its seizure to attend a meeting with Linzell Baker in which the purchase of five kilograms of cocaine was discussed. Rex Vernon, a special agent with the Federal Bureau of Investigation, testified that the Pontiac was seized because it was a conveyance in a drug transaction and that it was then turned over to the local Metropolitan Enforcement Group where, pursuant to standard procedures, it was inventoried and the address book was found.
 
 
 20
 Initially, we note that there is a significant question whether Fletcher has standing to challenge the search and seizure of Peake's car in that he may not have had a reasonable expectation of privacy in it. See Rawlings v. Kentucky, 448 U.S. 98 (1980). Even if, as was found by the district court, Fletcher had standing to challenge the seizure and subsequent search of Peake's car, we nevertheless find that there is no merit to Fletcher's challenge. Through Baker, the government was informed of the car's use in arranging a drug transaction, and on this basis the car was seized. Pursuant to 21 U.S.C. § 881, the government may seize a vehicle without a warrant when there is probable cause to believe that it was used or was intended to be used to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of controlled substances which have been manufactured, distributed, dispensed, or acquired in violation of Title 21 of the United States Code.
 
 
 21
 Because the seizure was lawful, the evidence discovered during the inventory search was admissible if that search was conducted pursuant to standard operating procedures. See United States v. Brown, 787 F.2d 929, 931-32 (4th Cir.) (holding that a warrantless inventory search is valid if the vehicle is in lawful custody, the inventory is routine and conducted pursuant to standard police procedures, and the purpose of the inventory is to secure the car or its contents and not to gather incriminating evidence against the owner) (citing South Dakota v. Opperman, 428 U.S. 364 (1976)), cert. denied, 479 U.S. 837 (1986). William Dayton, a member of the Asheville Police Department assigned to the Metropolitan Enforcement Group, testified that Agent Vernon turned over to him possession of Peake's 1989 Pontiac Grand Am, and that a search of the vehicle was conducted at the Rockwood Villa Apartments. When asked whether the Metropolitan Enforcement Group had a policy regarding the inventory of the contents of vehicles turned over to them, Vernon replied, "Yes, we do.... Anytime a vehicle is stored for any reason, an inventory search is conducted. An inventory-an inventory form is filled out and a copy goes to the wrecker service and a copy comes back to the police department and a copy is retained by the-by the officer." J.A. at 1227. Accordingly, we are satisfied that both the search and seizure of Peake's car was valid and that the address book discovered during the search was properly admitted into evidence.
 
 V
 
 22
 The appellants also challenge three other evidentiary rulings made at trial, contending that inadmissible hearsay statements were admitted as evidence. The court admitted a statement made by appellant Brewer to Officer Kenneth Razza following Brewer's arrest on April 14, 1990, "that he was in the cocaine business" which "could make as much as seven thousand dollars a week." The appellants argue that this statement was inadmissible hearsay and, furthermore, that admitting the statement into evidence violated the rule announced by the Supreme Court in Bruton v. United States, 391 U.S. 123 (1968). Brewer's statement to Razza, however, was properly admitted under Fed. R. Evid. 801(d)(2)(A) (out-of-court statement by a party is not hearsay when statement is offered at trial against that party), and therefore did not constitute inadmissible hearsay. Moreover, its admission did not violate the principles of Bruton. Bruton held that a defendant's rights under the Confrontation Clause of the Sixth Amendment are violated when a nontestifying co-defendant's confession, which names the defendant as a participant in the crime, is introduced at their joint trial, even when the jury is instructed to consider the confession only against the co-defendant. The statement made by Brewer to Razza, however, did not implicate specific co-conspirators and thus did not violate the holding of Bruton. See Richardson v. Marsh, 481 U.S. 200, 208-09 (1987) (holding that Bruton applies to "facially incriminating" statements which"expressly implicate[ ]" a codefendant, but not to a statement which is "not incriminating on its face," but becomes so only when linked with other evidence introduced at trial). We note, moreover, the trial court comprehensively instructed the jury not to construe Brewer's out-of-court statement to implicate the guilt or innocence of the other codefendants.[4]
 
 
 23
 The second challenged evidentiary ruling concerned the admission into evidence, under the coconspirator exception to the hearsay rule, of a letter written by Littlejohn to Fletcher while Littlejohn was incarcerated. See Fed R. Evid. 801(d)(2)(E). The appellants argue that the letter was inadmissible under that exception because it was written during the concealment phase of the conspiracy rather than "in furtherance of" the illegal agreement. The substance of the letter, however, belies appellants' contention. In it Littlejohn seeks to alert Fletcher that a prison inmate was preparing to testify against him, and accordingly we find the district court did not err in admitting it. See United States v. Grubb, 527 F.2d 1107, 1109 (4th Cir. 1975) (where the arrest of some coconspirator did not terminate the conspiracy but only made the participants who had not been arrested more careful, the trial court did not err in admitting testimony of government agents which repeated statements made by the coconspirator after their arrest).
 
 
 24
 Finally, Marion Thomas, Baker's brother, testified at trial that he had delivered cocaine from Florida to North Carolina for Baker from July to December of 1989. He further testified that Baker told him the drugs were going to "[a] guy named Boonie." "Boonie" was the appellant Fletcher's alias. The appellants contend that Baker's instructions to Thomas about the delivery of cocaine to Fletcher was improperly admitted into evidence "without there first having been a foundation laid that a conspiracy existed and the declarant was a member thereof." We reject the argument. It is well established in this circuit that a district court may admit statements of co-conspirators before the foundation for a conspiracy is laid, so long as the evidence as finally admitted supports the existence of a conspiracy. See United States v. Blevins, 960 F.2d 1252, 1256 (4th Cir. 1992) ("[W]e allow a trial court to conditionally admit co-conspirators' statements subject to the subsequent satisfaction of the requirements for their admission.") The independent evidence establishing Baker as a member of this drug conspiracy was extensive and therefore it was proper for the trial judge to have admitted into evidence his out-of-court statements about delivery of drugs to Fletcher.
 
 VI
 
 25
 The appellants Brewer and Littlejohn next challenge the trial court's denial of their motions for a judgment of acquittal. From a review of the record, however, there was ample evidence at the time the motions were filed upon which a reasonable jury could have found that Brewer and Littlejohn were members of the drug conspiracy. This is especially so in light of the fact that complete knowledge of all aspects of a conspiracy is not a prerequisite to a conspiracy conviction. See United States v. Mabry, 953 F.2d 127, 130 (4th Cir. 1991), cert. denied, 112 S.Ct. 1951 (1992); see also, United States v. Roberts, 881 F.2d 95, 101 (4th Cir. 1989) ("[O]ne may become a member of the conspiracy without full knowledge of all of its details, but if he joins the conspiracy with an understanding of the unlawful nature thereof and willfully joins in the plan on one occasion, it is sufficient to convict him of conspiracy, even though he had not participated before and even though he played only a minor part.").
 
 VII
 
 26
 Finally, Fletcher contends that by reason of the Double Jeopardy Clause his conspiracy conviction should be vacated in light of his conviction on the continuing criminal enterprise (CCE) charge. This argument was advanced by counsel and subsequently by Fletcher pro se in a supplemental brief. We have held that under certain circumstances a conspiracy conviction need not be vacated when that conspiracy is part of a CCE conviction. See United States v. McHan, 966 F.2d 134 (4th Cir. 1992). In this case, however, Fletcher's convictions for conspiracy and CCE are based on the same conduct and, therefore, the conspiracy conviction must be vacated under the Double Jeopardy Clause. The government does not argue otherwise. Because the length of Fletcher's sentence of imprisonment is not changed by vacating the conspiracy conviction, however, no remand will be necessary.
 
 
 27
 Accordingly we modify the judgment of the district court to vacate the conspiracy conviction against Andrew Fletcher, and in all other aspects of the appellants' trial and convictions, we affirm.
 
 AFFIRMED AS MODIFIED
 
 
 [1]
 Walter Fletcher, Andrew Fletcher's brother, was also named in several counts, but at the close of the government's case, the trial judge granted his motion for a judgment of acquittal. Although the appellants argue that the government kept Walter Fletcher in this case "solely to prejudice the other defendants" through his counsel's attacks on them, we cannot address that argument in any more detail than to observe that in the absence of any evidence to support the contention, it amounts to nothing more than speculation
 
 
 [2]
 See Joint Appendix at 1815:
 It is your duty [as a jury] to give separate, personal consideration to the case of each individual Defendant and when you do so you should analyze what the evidence in the case shows with respect to that individual Defendant, leaving out of consideration entirely any evidence that may have been admitted solely against any other Defendant. And each Defendant is entitled to have his or her case determined from evidence as to his or her own acts and statements and conduct and any other evidence in the case which may be applicable to him or her.
 
 
 [3]
 The stipulation as read into evidence stated:
 I t is stipulated by the Government and by the, all the Defendants that in the case of the United States versus Linzell Baker had a detention hearing which was held on September the 5th of 1990. That there was evidence offered that Linzell Baker earned sixteen hundred dollars per month doing odd jobs. Additionally there was evidence offered proffered by counsel for the Defendant that he supported himself by earnings from wagers at the Pompano harness track.... Finally, Your Honor, we stipulate that there was evidence offered that Linzell Baker lived in a home worth approximately three hundred thousand dollars. It's finally stipulated by the parties that this evidence was offered at a time before Mr. Baker became a cooperating witness and began to cooperate and provided this evidence to Your Honor. (J.A. at 1622-23).
 
 
 [4]
 See J.A. at 1821-22:
 Now the Government offered evidence, it contends, [which] tends to show that Defendant Brewer made a statement to an officer having to do with how he (the Defendant Brewer) made or could make a living. If you find that the Defendant Brewer made such a statement then you should consider all of the circumstances under which it was made in determining whether it was a truthful statement and the weight you will give it. This evidence was limited to Defendant Brewer and cannot be considered in the cases of any other Defendant. That was a legal decision made by the Court that this testimony should be considered only in the case of the Defendant Brewer and not in the cases of the others. What that means is that you may consider this testimony in the case of Defendant Brewer but you may not consider it in any way when you are deciding whether the Government has proved beyond a reasonable doubt that the other Defendant, or any of them, committed any of the crimes charged.